Cynthia Statham Heimermann BOYER

v.

Charles William HEIMERMANN.

Court of Appeals of Tennessee,
at Nashville.

Feb. 8, 2007 Session.

March 30, 2007.

Permission to Appeal Denied by
Supreme Court Aug. 13, 2007.

J.L. Thompson, III, Ashland City, Tennessee, for the appellant, Cynthia Statham Heimermann Boyer.

D. Scott Parsley and Michael K. Parsley, Nashville, Tennessee, for the appellee, Charles William Heimermann.

## OPINION

WILLIAM C. KOCH, JR., P.J., M.S., delivered the opinion of the court, in which WILLIAM B. CAIN and FRANK G. CLEMENT, JR., JJ., joined.

This appeal involves a custody and visitation dispute arising more than a decade after the parents were divorced. The original divorce decree provided that the three children, then between two and seven years of age, would reside with their mother during the school year and with their father during the summer. Because of the children's growing dissatisfaction with this arrangement, their mother filed a petition in the Circuit Court for Davidson County

requesting that the length of the father's summer visitation be reduced. The trial court dismissed the petition at the close of the mother's case on the ground that she had failed to prove a material change in circumstances that would warrant a revision of the custody arrangement. The mother appealed. We have determined that the changing needs of the children related to their growing older constitute a material change in circumstances. Accordingly, we reverse the dismissal of the mother's petition and remand the case for further proceedings consistent with this decision.

## I.

On December 22, 1995, the Circuit Court for Davidson County entered a decree of divorce ending the marriage of Charles William Heimermann and Cynthia Statham Heimermann. The decree provided that the parties would "share custody" of their three minor children—then between two and seven years of age. The children would reside with their mother "during the nine (9) month school year" and with their father "during the three (3) summer months." Throughout the year, the parents were given visitation on alternating weekends, and the parent with whom the children were not residing was given one day of mid-week visitation.

Both parties remarried. Ms. Heimermann married Kirk Boyer in 1998 and moved to Spring Hill.[1] Mr. Heimermann married Joy Heimermann in 2000 and moved to Franklin. The Heimermanns have had a child of their own, and the current Ms. Heimermann has a daughter from a prior marriage who is approximately the same age as the parties' two older children.

Mr. Boyer earns a good income, and that has enabled Ms. Boyer to work sparingly and to devote a significant amount of time to the parties' children. She home-schooled the children from 2001 through 2003. Ms. Boyer participates in many of the children's extracurricular activities and chauffeurs them to their sports events, driving tests, and doctor's visits. She also has frequent telephone conversations with them during the summer when they are residing with Mr. Heimermann. The parties' youngest daughter regards Ms. Boyer as her best friend.

Mr. Heimermann is a self-employed carpenter. His work requires him to leave home early in the morning while the children are still asleep and to return home late. He works on the weekends when business requires. His regular routine when he comes home from work includes a nap and a shower and then dinner with the family around 8:30 or 9:00 p.m. Mr. Heimermann retires shortly after dinner.

Following the divorce in 1995, Mr. Heimermann has insisted on a rigid demarcation between the time the children spend with him during the summer and the time they reside with Ms. Boyer. He has cancelled the children's appointments with doctors if Ms. Boyer made then on "his time," and he has refused to make appointments for the children during the summer. He has also refused to permit Ms. Boyer to see the children during the summer months except for the periods prescribed in the divorce decree.

The children's summer routine is vastly different from their routine during the school year, even though Mr. Heimermann's home is only twenty minutes away from Ms. Boyer's home. They are essentially house-bound. Mr. Heimermann does not permit them to see their friends or

---

1. Ms. Heimermann changed her surname to "Boyer" following her marriage to Mr. Boyer.

We will refer to her as "Ms. Boyer" for the remainder of the opinion.

engage in their usual activities, including church events, drama clubs, and sports. He will not permit the children to have part-time jobs to earn money for school or to buy a car. After his son found a job at Kroger, Mr. Heimermann personally went to Kroger to have his son fired. When the children have asked their father to drive them to friends' houses or to church functions or other activities, he has called them "high maintenance" and "spoiled."

Mr. Heimermann also expects absolute obedience from his children during the summer and is a strict disciplinarian. After his older daughter stayed out too late, he forbade her from attending her regular church and insisted that she attend church with him. When his daughter defied him and went to her own church with her brother, Mr. Heimermann went to the church and physically removed the children during the service. Following an argument in the parking lot, Mr. Heimermann called the police and charged his daughter with unruly conduct.[2]

As the years went on, the children became increasingly hesitant about spending the entire summer with Mr. Heimermann. While they loved and respected him, they did not relish the prospect of spending the summer months with no contact with their friends, no activities or summer jobs, and with little to do other than staying at home watching television and listening to music. Ms. Boyer encouraged the children to cooperate with their father and also urged Mr. Heimermann to spend more time with the children and to provide them with more activities. Mr. Heimermann ignored her suggestions.

Eventually, in response to the children's reluctance to continue to spend the entire summer with their father, Ms. Boyer filed a petition in the Circuit Court for Davidson County in May 2005 requesting a modification in summer visitation, an increase in child support, and to hold Mr. Heimermann in contempt for failing to pay child support and his share of the premiums for the children's health insurance. Mr. Heimermann moved to dismiss the request to modify the summer visitation on the ground that no material change of circumstances had occurred since the entry of the divorce decree. He also sought to have Ms. Boyer held in criminal contempt for interfering with his visitation.

On September 26, 2005, Ms. Boyer requested the trial court to transfer the case to the Chancery Court for Williamson County pursuant to Tenn.Code Ann. §§ 36–5–3001 through –3009 (2005 & Supp. 2006) because both parties and the children resided in Williamson County rather than Davidson County. Mr. Heimermann objected to the motion on the ground that it was "nothing other than an attempt at forum shopping." He also filed a second petition to hold Ms. Boyer in criminal contempt for twenty incidents that he viewed as "conduct designed to undermine his parental authority." On November 1, 2005, the trial court entered an order denying Ms. Boyer's motion to transfer the case, stating that it "will not allow this matter to be transferred to the Williamson County Court."

The parties' various petitions and motions were heard on May 30, 2006. Ms. Boyer and the three children testified about the summer visitations with Mr. Heimermann. Mr. Heimermann moved for a directed verdict at the close of Ms. Boyer's case-in-chief. The trial court granted the motion based on its conclusion

---

**2.** The child did not contest the unruly conduct charge, and the juvenile court sentenced her to perform sixteen hours of community service work. The child was also required to take a drug test, even though there was no indication that she abused alcohol or drugs.

that there had been "absolutely no specific change of circumstance at all that was not foreseeable." The trial court also added that Mr. Heimermann was not a "bad" or "oppressive" parent and that "the children appear to have a sense of entitlement that they be entertained." Accordingly, the trial court declined to change custody or to alter the visitation arrangement in the original 1995 divorce decree. The court also found that Ms. Boyer was in contempt for interfering with Mr. Heimermann's visitation. However, after concluding that Ms. Boyer's conduct was not "very blatant or willful," the court order Ms. Boyer to "take a tour of the jail cell adjacent to the [c]ourtroom." The trial court also ordered Ms. Boyer to pay Mr. Heimermann $3,500 for his legal expenses. Ms. Boyer has appealed.

## II.

### THE STANDARD OF REVIEW

■ The trial court disposed of this case by granting Mr. Heimermann's Tenn. R. Civ. P. 50.01 motion for a directed verdict. This was, of course, an improper motion because motions for directed verdicts have no place in bench trials.[3] The proper motion would have been a motion for an involuntary dismissal at the conclusion of the plaintiff's proof in accordance with Tenn. R. Civ. P. 41.02. Accordingly, we will construe the trial court's order as if it were an order granting a Tenn. R. Civ. P. 41.02 dismissal.[4]

---

3. Tenn. R. Civ. P. 50.01 motions are inapplicable to bench trials just as Tenn. R. Civ. P. 41.02(2) motions are inapplicable in jury trials. *Burton v. Warren Farmers Coop.*, 129 S.W.3d 513, 520 (Tenn.Ct.App.2002).

4. *Thompson v. Hensley*, 136 S.W.3d 925, 929 n. 2 (Tenn.Ct.App.2003); *Warden v. Wortham*, No. M2002–00364–COA–R3–CV, 2003 WL 22098029, at *4 (Tenn.Ct.App. Sept.11, 2003)

■ When a motion for involuntary dismissal is made at the conclusion of the plaintiff's proof in a bench trial, "the trial court must impartially weigh the evidence as though it were making findings of fact and conclusions of law after all the evidence has been presented." *Building Materials Corp. v. Britt*, 211 S.W.3d 706, 711 (Tenn.2007); *Thompson v. Hensley*, 136 S.W.3d at 929; *see also Burton v. Warren Farmers Coop.*, 129 S.W.3d at 520. If a plaintiff has failed to demonstrate her right to relief by a preponderance of the evidence under the facts as found by the court and pursuant to the applicable law, then the case should be dismissed. *Building Materials Corp. v. Britt*, 211 S.W.3d at 711; *Burton v. Warren Farmers Coop.*, 129 S.W.3d at 520–21.

■ The standard of review of a trial court's decision to grant a Rule 41.02 involuntary dismissal is governed by Rule 13(d) of the Tennessee Rules of Appellate Procedure. *Building Materials Corp. v. Britt*, 211 S.W.3d at 711. This standard is appropriate because the trial court has used the same reasoning to dispose of the motion that it would have used to make a final decision at the close of all the evidence. *Burton v. Warren Farmers Coop.*, 129 S.W.3d at 521. Thus, we must review the record on appeal de novo with a presumption that the trial court's factual findings are correct. We will affirm the trial court's decision unless the evidence preponderates against the trial court's factual determinations or unless the trial court has committed an error of law affecting

---

(No Tenn. R.App. P. 11 application filed); *Curtis v. Curtis*, No. 01A01–9508–CV–00385, 1997 WL 396242, at *2 (Tenn.Ct.App. July 16, 1997) (No Tenn. R.App. P. 11 application filed); *Memphis Aviation, Inc. v. Kershaw*, Shelby Law No. 25, 1987 WL 12400, at *1 (Tenn.Ct.App. June 19, 1987) (No Tenn. R.App. P. 11 application filed).

the outcome of the case. We will also give great weight to the trial court's assessment of the evidence because the trial court is in a much better position to evaluate the credibility of the witnesses. *Burton v. Warren Farmers Coop.*, 129 S.W.3d at 521.

■■■ Making determinations on issues related to custody and visitation are among the most important decisions confronting courts. *In re Zaylen R.*, No. M2003–00367–COA–R3–JV, 2005 WL 2384703, at *3 (Tenn.Ct.App. Sept.27, 2005) (No Tenn. R.App. P. 11 application filed); *Gaskill v. Gaskill*, 936 S.W.2d 626, 630 (Tenn.Ct.App.1996). When a court is devising a parenting plan, it should strive to create a plan that promotes the development of the children's relationship with both parents and interferes as little as possible with post-divorce family decision-making. *Shofner v. Shofner*, 181 S.W.3d 703, 715 (Tenn.Ct.App.2004); *Adelsperger v. Adelsperger*, 970 S.W.2d 482, 484 (Tenn. Ct.App.1997). In approaching questions of custody and visitation, the needs of the children are paramount; the desires of the parents are secondary. *Shofner v. Shofner*, 181 S.W.3d at 715–16; *Gaskill v. Gaskill*, 936 S.W.2d at 630. Custody or visitation should never be used to punish parents for their human frailties and past mis-steps or conversely as a reward for parents. *Shofner v. Shofner*, 181 S.W.3d at 716; *Sherman v. Sherman*, No. 01A01–9304–CH–00188, 1994 WL 649148, at *5 (Tenn.Ct.App. Nov.18, 1994) (No Tenn. R.App. P. 11 application filed) ("[W]e do not use custody or visitation decisions to punish or reward parents for their conduct."). Instead decisions on questions related to custody and visitation should be directed towards promoting the children's best interests by placing them in an environment that will best serve their physical and emotional needs. *Shofner v. Shofner*, 181 S.W.3d at 716; *Gaskill v. Gaskill*, 936 S.W.2d at 630.

## III.

### The Existence of Material Changes in Circumstances[5]

■■■ Ms. Boyer asserts that the trial court erred by concluding that she had failed to establish that material changes in the parties' and the children's circumstances had occurred during the ten-year period between the entry of the parties' divorce decree and the filing of her petition to modify the existing custody arrangement. She insists that her testimony, coupled with the testimony of the parties' three children, permit no conclusion other than that a material change of circumstances has occurred. We have determined that Ms. Boyer has made a prima facie showing that a material change in circumstances has occurred.

### A.

■■■ The threshold issue in every case involving a modification in an existing custody or visitation arrangement is whether a material change in circumstances has occurred. *Kendrick v. Shoemake*, 90 S.W.3d 566, 570 (Tenn.2002). During the past decade or so, the "material change in circumstances" standard has undergone a statutory and common-law metamorphosis. *Kesterson v. Varner*, 172 S.W.3d 556, 560 (Tenn.Ct.App.2005). The standard, as it now exists, provides a flexible framework

---

5. The courts and the Tennessee General Assembly use the phrases "material change in circumstances" and "material change of circumstances" interchangeably. While both phrases refer to the same concept, we will use the phrase "material change in circumstances" in this opinion in conformity with the Tennessee Supreme Court's customary usage.

within which the courts consider a number of factors when determining whether an existing custody or visitation arrangement should be modified. *Cranston v. Combs,* 106 S.W.3d 641, 645 (Tenn.2003).

The evolution of the "material change in circumstances" standard has focused on the criteria for determining whether a particular change in circumstances is "material" enough to require reconsideration of an existing custody or visitation arrangement. In 2002 and 2003, the Tennessee Supreme Court handed down three decisions that clarified the principles associated with the "material change in circumstances" standard.[6] The court emphasized that there are no bright-line rules for determining whether a material change in circumstances has occurred. *Cranston v. Combs,* 106 S.W.3d at 644; *Kendrick v. Shoemake,* 90 S.W.3d at 570; *Blair v. Badenhope,* 77 S.W.3d at 150.[7] The court also explained that several of the many considerations relevant to determining whether a material change in circumstances has occurred include: (1) whether the change occurred after the entry of the order sought to be modified, (2) whether the change was not known or reasonably anticipated when the order was entered, and (3) whether the change is one that affects the child's well-being in a meaningful way. *Cranston v. Combs,* 106 S.W.3d at 644; *Kendrick v. Shoemake,* 90 S.W.3d at 570; *Blair v. Badenhope,* 77 S.W.3d at 150.

In 2004, the Tennessee General Assembly enacted legislation directed specifically at the "material change in circumstances" standard.[8] Tenn.Code Ann. § 36–6–101(a)(2)(C) provides:

If the issue before the court is a modification of the court's prior decree pertaining to a residential parenting schedule, then the petitioner must prove by a preponderance of the evidence a material change of circumstances affecting the child's best interest. A material change of circumstances does not require a showing of a substantial risk of harm to the child. A material change of circumstances for purposes of modification of a residential parenting schedule may include, but is not limited to, significant changes in the needs of the child over time, which may include changes relating to age; significant changes in the parent's living or working condition that significantly affect parenting, failure to adhere to the parenting plan; or other circumstances making a change in residential parenting time in the best interest of the child.

Tenn.Code Ann. § 36–6–101(a)(2)(C) is significant in at least two ways. First, it reflects the General Assembly's agreement with the Tennessee Supreme Court's rejection of the earlier decisions by this court[9] that the "material change in circumstances" standard required a showing of substantial risk of harm to the child. *Cranston v. Combs,* 106 S.W.3d at 645. Second, it also reflects the General Assembly's understanding that even changes that

---

**6.** *Cranston v. Combs,* 106 S.W.3d 641 (Tenn. 2003); *Kendrick v. Shoemake,* 90 S.W.3d 566 (Tenn.2002); *Blair v. Badenhope,* 77 S.W.3d 137 (Tenn.2002).

**7.** *Solima v. Solima,* 7 S.W.3d 30, 32 (Tenn.Ct. App.1998) ("There are no hard and fast rules for determining when a child's circumstances have changed sufficiently to warrant a change in his or her custody or visitation arrangement.").

**8.** Act of May 6, 2004, ch. 759, § 2, 2004 Tenn. Pub. Acts 1737, codified at Tenn.Code Ann. § 36–6–101(a)(2)(C) (2005).

**9.** *See, e.g., Wall v. Wall,* 907 S.W.2d 829, 834 (Tenn.Ct.App.1995); *Musselman v. Acuff,* 826 S.W.2d 920, 922–24 (Tenn.Ct.App.1991).

could have been reasonably anticipated when the original decree was entered can trigger a reconsideration of custody and visitation.

Whether a particular change in circumstances could reasonably have been anticipated at the time of the entry of the original decree is only one of many factors to consider. It has never been outcome-determinative. Indeed, the courts and the General Assembly have recognized that material changes in circumstances can arise solely by the passage of time because children's needs change as they grow older. The House sponsor of Tenn.Code Ann. § 36–6–101(a)(2)(C) drove this point home when he explained that the purpose of the legislation was "mainly to ... deal with age appropriate modification" of parenting schedules.[10] Likewise, the Senate sponsor of the legislation explained that the common-law "material change in circumstances" standard was "pretty strict" and that the legislation would "give the court a few things to consider."[11] He also explained that the bill "add[s] factors to be considered for a modification as the needs of the child changed over time" and that the bill would enable the courts "to adjust to the changes of life over time and allow modifications to occur more easily when certain changes in life occur."[12]

 Not every change in the circumstances of either a child or a parent will qualify as a material change in circumstances. The change must be "significant"

before it will be considered material. However, this court has noted that Tenn.Code Ann. § 36–6–101(a)(2)(C) sets "a very low threshold for establishing a material change of circumstances." *Rose v. Lashlee,* No. M2005–00361–COAR3–CV, 2006 WL 2390980, at *2 n. 3 (Tenn.Ct.App. Aug.18, 2006) (No Tenn. R.App. P. 11 application filed). Accordingly, evidence that an existing custody arrangement was proven unworkable in a significant way is sufficient to satisfy the "material change in circumstances" standard. *Rose v. Lashlee,* 2006 WL 2390980, at *2 n. 3; *Rushing v. Rushing,* No. W2003–01413–COA–R3–CV, 2004 WL 2439309, at *6 (Tenn.Ct.App. Oct.27, 2004) (No Tenn. R.App. P. 11 application filed); *Turner v. Purvis,* No. M2002–00023–COA–R3–CV, 2003 WL 1826223, at *4 (Tenn.Ct.App. Apr.9, 2003) (No Tenn. R.App. P. 11 application filed); *Vaccarella v. Vaccarella,* 49 S.W.3d 307, 318 (Tenn.Ct.App.2001); *Dalton v. Dalton,* 858 S.W.2d 324, 326 (Tenn.Ct.App.1993).

**B.**

Using the standards required by Tenn. Code Ann. § 36–6–101(a)(2)(C), it is difficult to reach any conclusion other than that Ms. Boyer and her children have established that a material change in the children's circumstances has occurred. More than a decade has passed since the entry of the divorce decree, and during that time, the children have grown older and have developed new interests and focuses for their lives.[13] They have become

10. Rep. Russell Johnson, House Children and Family Affairs Committee, Apr. 6, 2004. Representative Johnson also noted that "maybe the child is four or five years older than when ... [the court] first dealt with the issue and that may be a reason to make a modification."

11. Sen. Jeff Miller, Senate Judiciary Committee, Mar. 2, 2004.

12. Sen. Jeff Miller, Senate Judiciary Committee, Mar. 2, 2004.

13. One court concluded that a material change in circumstances had occurred based on evidence that a boy had grown older and that his father desired to spend more time with him playing basketball and catch, fishing and camping, and teaching his son his trade. *Ahrens v. Conley,* 5 Neb.App. 689, 563 N.W.2d 370, 372–73 (1997). *See also Muller v. Mul-*

teenagers involved in a variety of activities, and they have developed a number a varying interests ranging from team sports and drama clubs to church groups and camps.[14] They want to spend time with their friends and get jobs to earn money for college or to purchase cars.[15]

Based on the evidence in this record, the children have not been permitted to pursue their interests, take jobs, or spend time with their friends during the summer when they are living with their father. According to the children, their activities are mostly limited to sitting around the house and doing little other than watching television and listening to music all day, every day. Mr. Heimermann works extremely hard at an exhausting job that leaves him too tired and with too little energy to spend much time with his children. He has been unable or unwilling to accommodate the children's outside activities or interests while he is working, and this lack of flexibility has clearly caused considerable strain on his relationship with

his children.[16] As a result, the children no longer desire to spend the entire summer with their father.

The parties' oldest child, who has now turned eighteen years of age, is no longer required to abide by the visitation arrangements of the divorce decree.[17] He has indicated that although he loves his father, he does not wish to spend the entire summer with him. Assuming that the young man does not change his mind, his two sisters will not spend much if any of the summer with him, despite the fact that they are quite close.

The trial court erred by focusing solely on the foreseeability that the children would grow older and that their needs and interests would change over time. Following the enactment of Tenn. Code Ann. § 36–6–101(a)(2)(C), the court should have considered whether the changes that have occurred in the children's lives are significant. The salient consideration is not the change of age

ler, 3 Neb.App. 159, 524 N.W.2d 78, 86 (1994)(finding a material change in circumstance where the children "were 4 years older than they were when visitation was last modified. They had a new sibling from the remarriage of [their mother]. [And,] [t]hey expressed a desire to take extended vacations with both parents.").

**14.** In re Marriage of Kurth, 438 N.W.2d 852, 855 (Iowa Ct.App.1989) ("We also agree with the court in its reduction of the six weeks visitation during the summer months. As [their son] gets older, such a lengthy visitation will unduly disrupt summer activities, and may interfere with summertime pursuits he wishes to engage in.").

**15.** Taylor v. Taylor, No. CA 89–312, 1990 WL 52691, at * 3 (Ark.Ct.App. Apr.25, 1990) (finding a material change in circumstance and changing the father's exclusive summer custody on the basis of the fact that his daughter was becoming a teenager and would be interested in spending more time with her peers).

**16.** Parenting teenagers requires flexibility because their schedules and lives often do not fit neatly into the confines of court-ordered visitation periods. Rudich v. Bezahler, No. FA970401394S, 2005 WL 3292091, at *8 (Conn.Super.Ct. Nov.9, 2005).

**17.** With certain exceptions not relevant here, persons who are eighteen years of age have the same rights, duties, and responsibilities as persons who are twenty-one years of age. Tenn.Code Ann. § 1–3–113(a) (2003). This statute "completely emancipated those over eighteen years of age from the control of their parents." Nichols v. Atnip 844 S.W.2d 655, 659 (Tenn.Ct.App.1992). Thus, a custody or visitation arrangement is no longer binding on children once they become eighteen. See Stephenson v. West, No. W1998–00668–COA–R3–CV, 2000 WL 52899, at * 3 n. 1 (Tenn.Ct. App. Jan.13, 2000) (No Tenn. R.App. P. 11 application filed); Brewer v. Brewer, No. 01A01–9710–CH–00611, 1999 WL 355906, at *2–3 (Tenn.Ct.App. June 4, 1999) (No Tenn. R.App. P. 11 application filed).

alone; it is the age-related changes in the children's needs.

By enacting Tenn.Code Ann. § 36–6–101(a)(2)(C), the General Assembly has made a policy decision to make it easier to establish that a material change in circumstances has occurred. The courts must adhere to this policy, even if it establishes a lower threshold than heretofore existed in Tennessee or that currently exists in other states. Tenn.Code Ann. § 36–6–101(a)(2)(C) establishes that significant changes in the needs of children as they grow older constitute a material change of circumstance. That is precisely what has transpired in this case.

Based on the evidence in this record, it cannot be reasonably questioned that the children's interests, involvements, and capabilities have changed significantly since the entry of their parents' divorce decree. They are no longer the young children they were in 1995.[18] Thus, a custody and visitation arrangement that was satisfactory when they were ages two, five, and seven may not, and probably does not, serve their current needs. At this stage, the unrebutted testimony of Ms. Boyer and the parties' children make out a prima facie case that a material change in circumstances has occurred. Accordingly, we find that the evidence does not support the trial court's conclusion that Ms. Boyer has failed to prove the existence of a material change in circumstances.

## IV.
### THE CHILDREN'S BEST INTERESTS

■ Concluding that Ms. Boyer made a prima facie showing that there has been a material change in the children's circumstances during the past ten years does not end the matter. The existing custody and visitation arrangement should not be modified unless it is in the children's best interests to do so. The trial court's hasty decision to dismiss the case following Ms. Boyer's case short-circuited the inquiry into whether altering the existing custody arrangement would be in the two remaining minor children's best interests.

■ Tennessee's courts are statutorily authorized to alter custody arrangements as required by intervening circumstances. Tenn.Code Ann. § 36–6–101(a)(1). Addressing petitions to modify custody or visitation is a two-step process. The threshold question is whether a material change in circumstances has occurred since the entry of the prior order. *Krupp v. Cunningham–Grogan*, No. M2005–01098–COA–R3–CV, 2006 WL 2505037, at *7 (Tenn.Ct.App. Aug.29, 2006) (No Tenn. R.App. P. 11 application filed).[19] The second question is whether it is in the child's best interests to modify the current custody or visitation arrangement. However, the court should address the "best interests" question only if it first determines that a material change in circumstances has occurred. *Krupp v. Cunningham–Grogan*, 2006 WL 2505037, at *7.[20] If a

18. *Hollinger v. Hollinger*, 65 Ark.App. 110, 986 S.W.2d 105, 108 (1999) (concluding that a material change in circumstances had occurred based on evidence that the children were six years older and had developed a strained relationship with their mother); *In re Custody of Peal*, 305 N.C. 640, 290 S.E.2d 664, 668 (1982) (finding a material change in circumstances based on the fact that the children had grown older and were more mature).

19. *See also McEvoy v. Brewer*, No. M2001–02054–COA–R3–CV, 2003 WL 22794521, at *4 (Tenn.Ct.App. Nov.25, 2003) (No Tenn. R.App. P. 11 application filed); *Sherman v. Sherman*, 1994 WL 649148, at *3.

20. *Maynor v. Nelson*, No. M2005–02362–COA–R3–CV, 2006 WL 3421288, at *1 (Tenn. Ct.App. Nov.27, 2006) (No Tenn. R.App. P. 11 application filed); *see also McEvoy v. Brewer*, 2003 WL 22794521, at *4 (internal citations

material change in circumstances has occurred, then the best interests analysis becomes mandatory. *Keisling v. Keisling,* 196 S.W.3d 703, 718 (Tenn.Ct.App.2005).[21]

■■■■ These two questions—the existence of a material change in circumstances and the child's best interests— have the unfortunate tendency to not only shade the other, as is inevitable and appropriate, but to bleed to become indistinguishable. Despite this tendency, the proper inquiry into whether there has been a material change in circumstances is actually not directly tied to the substantive question regarding the best custody and visitation arrangement under the present circumstances. *Krupp v. Cunningham–Grogan,* 2006 WL 2505037, at *7. A finding of a material change in circumstances since the entry of the visitation order does not predetermine the outcome of the best interests analysis. *Krupp v. Cunningham–Grogan,* 2006 WL 2505037, at *7. Thus, a finding of a material change in circumstance warranting a re-evaluation of the parenting plan does not necessarily require that any change in visitation be made. *Krupp v. Cunningham–Grogan,* 2006 WL 2505037, at *7. Instead, such a finding requires the court move to the second step—best interests analysis.

■■■■ Mr. Heimermann was not afforded an opportunity to present evidence of his own because of the trial court's peremptory dismissal of Ms. Boyer's case. It would be unfair to Mr. Heimermann to rule on the merits of Ms. Boyer's petition to change custody and visitation until he has been given a full and fair opportunity to present evidence refuting the evidence already in the record that a material change in circumstances has occurred or establishing that the children's interests would be best served by leaving the current custody and visitation arrangement intact. Accordingly, this appeal does not present an appropriate occasion to decide what the best interests of the children are. This decision should be made only after Mr. Heimermann has been given an opportunity to present his evidence.

## V.

### THE PROPER FORUM FOR FURTHER PROCEEDINGS

■■■ A significant portion of Ms. Boyer's appellate brief is devoted to her assertion that the trial court's decision was tainted by bias and prejudice against her and the children. Appellate courts take arguments of this sort very seriously because all litigants are entitled to the cold neutrality of an impartial court. *Davis v. Liberty Mut. Ins. Co.,* 38 S.W.3d 560, 564 (Tenn.2001); *In re C.T.S.,* 156 S.W.3d 18, 22 (Tenn.Ct.App.2004); *Kinard v. Kinard,* 986 S.W.2d 220, 227 (Tenn.Ct.App.1998). These arguments take on added significance in cases in which a remand for further proceedings may become necessary. Notwithstanding the seriousness of this issue, we have decided we need not address head-on the issue of the trial court's bias in this case. The public policy of this state, reflected in the statutes governing the in-

omitted) ("If the person seeking the change of custody cannot demonstrate that a material change in circumstances has occurred, the court should not re-examine the comparative fitness of the parents, or engage in a 'best interests of the child' analysis.").

21. *See also In re M.J.H.,* 196 S.W.3d 731, 745 (Tenn.Ct.App.2005); *Varney v. Roemer,* No.

M2000–03234–COA–R3–CV, 2001 WL 1480524, at *6 (Tenn.Ct.App. Nov.21, 2001) (No Tenn. R.App. P. 11 application filed) ("Because there was a material change of circumstances, the second part of the analysis must be considered: whether a change of custody is in the best interest of the children.").

ter-county transfer of child custody and divorce matters, will require that the case be transferred to Williamson County for further proceedings once it has been remanded. Therefore, the trial court will not be presiding over the further proceedings in this case.

By the time the trial court conducted the hearing in this case, neither Mr. Heimermann, nor Ms. Boyer, nor the children resided in Davidson County. In fact, both the parents and the children had been residing in Williamson County for at least fourteen months. This change in the parties' residence had prompted Ms. Boyer to request in September 2005 that the case be transferred to Williamson County. On November 1, 2005, after Mr. Heimermann complained that the request amounted to forum shopping, the trial court declined to transfer the case despite the mandatory statutory requirements.

Ms. Boyer did not raise the denial of her motion to transfer the case on appeal. However, because Tenn. R.App. P. 13(b) empowers this court to exercise its discretion to consider issues not raised by the parties, we invited both Mr. Heimermann and Ms. Boyer to file supplemental briefs addressing the application of the inter-county transfer statutes to this case. Both parties concede that they have long since moved away from Davidson County and that the children have resided in Williamson County for more than six months.

However, they both assert that the inter-county transfer statutes should have no application to this case because this court should decide the summer parenting arrangement and Mr. Heimermann's child support obligation once and for all based on the present record.[22] This we cannot do. We have already pointed out that the decisions regarding the modification of the summer parenting arrangement and the amount of Mr. Heimermann's child support obligation cannot be decided on appeal because Mr. Heimermann has not been provided an opportunity to present evidence on either issue. Basing a decision at this juncture solely on Ms. Boyer's evidence would effectively deprive Mr. Heimermann of his day in court.

Even though Ms. Boyer has effectively waived her opportunity to take issue with the trial court's denial on November 1, 2005 of her motion to transfer the case to Williamson County,[23] we must still address the application of the inter-county transfer statutes to this case. There is no escaping the fact that once this case is remanded for further proceedings, the court in Davidson County will have no real connection with the parties or their children other than the fact that it had originally granted the parties' divorce in December 1995.

In 1997, the Tennessee General Assembly enacted inter-county transfer statutes pertaining to post-divorce proceedings involving the enforcement or modification of

22. In her supplemental brief, Ms. Boyer recognizes the mandatory nature of the inter-county transfer statutes but insists that they are inapplicable at this stage of the proceeding. She argues that "in the future, but only after the conclusion of this appellate process ... either party who wishes to take legal action concerning custody, visitation, child support or any other matter affecting their three ... children or any of them, will have to file in Williamson County, where the parties and their children have lived for many years."

23. Surprisingly, Ms. Boyer concedes in her supplemental brief that she was, in fact, forum shopping when she filed her motion to transfer the case in September 2005 and that she waited too long to file her motion. While these concessions may reflect on the differences in the strategy of Ms. Boyer's current lawyer and the lawyer who was representing her in September 2005, they do not prevent us from considering the prospective application of the inter-county transfer statutes to future proceedings in this case.

child support and child custody orders.[24] These statutes reflected the General Assembly's recognition that issues of child support, custody, and visitation should be litigated in the court with the most significant, current connection to the parents and the children. However, in 1997, the General Assembly stopped short of requiring inter-county transfers.[25]

In 2000, the General Assembly determined that inter-county transfers should be mandatory if two factual conditions are met.[26] These two conditions are (1) that the child has been residing in the county to which the case will be transferred for at least six months and (2) that neither the child nor the parents continue to reside in the county where the original decree was entered. Tenn.Code Ann. § 36–5–3003(b). The only grounds for objecting to the transfer of a case to another county in Tennessee are (1) that the child has not resided in the "transferee county" for at least six months,[27] or (2) that the child or one of the parties continue to reside in the "transferor county." [28]

As we interpret Ms. Boyer's supplemental brief, she has stated that she intends to invoke the inter-county transfer statutes for any future litigation in this case "concerning custody, visitation, child support or any other matter affecting their three … children or any of them." Therefore, once this case is remanded to the trial court for

further hearings regarding her requests for modification of the parenting arrangements during the summer and for increased child support, it is apparent that Ms. Boyer will file another motion to transfer the case to Williamson County. In light of the undisputed evidence in this record regarding the current residence of Mr. Heimermann, Ms. Boyer, and the children, this petition, if filed, must be granted and the case must be transferred to a court of competent jurisdiction in Williamson County.

## VI.

### Ms. Boyer's Request for Additional Child Support

Ms. Boyer also asserts that the trial court erred by failing to increase Mr. Heimermann's child support payments from $341.00 per month to $959.00 per month and to require him to pay $723.97 in expenses related to the children's healthcare. We have determined that these issues are better addressed on remand. Mr. Heimermann's prospective child support obligation will be influenced by the fact that the parties' oldest child has now reached the age of majority and by any change that might be made in the custody and visitation arrangements. The trial court will also be better able to address Mr. Heimermann's child support obligations accruing after the filing of Ms.

24. Act of May 30, 1997, ch. 551, § 5, 1997 Tenn. Pub. Acts. 1012, 1036–1039, codified as amended at Tenn.Code Ann. §§ 36–5–3001 through –3009 (2005 & Supp.2006).

25. Tenn.Code Ann. § 36–5–3003(b) as originally enacted in 1997 provided that "[a] case may be transferred to any court of competent jurisdiction if all of the following apply …" The General Assembly included the same permissive language in its 1998 amendment to Tenn.Code Ann. § 36–5–3003(b). Act of Apr. 29, 1998, ch. 1098, § 50, 1998 Tenn. Pub. Acts 1113, 1125.

26. Act of June 7, 2000, ch. 922, § 31, 2000 Tenn. Pub. Acts 2725, 2734. As amended Tenn.Code Ann. § 36–5–3003(b) now provides that "[u]pon receipt of a request, the case must be transferred by the clerk of the issuing court, without order of the court, to a court of competent jurisdiction in the county where the child or children reside …"

27. Tenn.Code Ann. § 36–5–3007(b)(2).

28. Tenn.Code Ann. § 36–5–3007(b)(1).

Boyer's petition once Mr. Heimermann is afforded an opportunity to testify.

## VII.

The trial court's November 1, 2005 and June 22, 2006 orders denying Ms. Boyer's request to transfer the case to Williamson County, to modify the custody and visitation arrangement, and to increase her child support are reversed, and the case is remanded for further proceedings consistent with this opinion. We tax the costs of this appeal to Mr. Heimermann for which execution, if necessary, may issue.