IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs March 29, 2011

## WHITNEY W. WEBB v. JUSTIN L. PEWITT

**Direct Appeal from the Chancery Court for Benton County**
**No. 1108      Ron E. Harmon, Chancellor**

_____

**No. W2010-01715-COA-R3-CV - Filed April 28, 2011**

_____

This is a post-divorce modification of child custody case. The trial court modified custody upon its finding that a material change in circumstances had occurred such that primary residential custody with the Appellant Mother was no longer in the child's best interest. The court granted primary residential custody to the Appellee Father and Mother appeals. Discerning no error, we affirm.

**Tenn. R. App. P. 3. Appeal as of Right; Judgment of the Chancery Court Affirmed**

J. STEVEN STAFFORD, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and DAVID R. FARMER, J., joined.

Anthony L. Clark, Paris, Tennessee, for the appellant, Whitney W. Webb.

Teresa McCaig Marshall, Paris, Tennessee, for the appellee, Justin L. Pewitt.

**MEMORANDUM OPINION[1]**

Appellant Whitney W. Webb and Appellee Justin L. Pewitt were married on February 2, 2002. One child was born to the marriage on August 6, 2002. The parties were divorced by final decree of the Chancery Court of Benton County on July 11, 2005. In conjunction

---

[1]Rule 10 of the Rules of the Court of Appeals of Tennessee provides:

This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION," shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

with the divorce, a permanent parenting plan was entered on February 3, 2005. The initial plan provided for a joint parenting schedule, whereby the parties would share equal time with the child, and would also make all decisions concerning the child jointly. On June 12, 2006, Ms. Webb filed a motion to set specific visitation, alleging that she had been acting as the child's primary residential parent, with Mr. Pewitt exercising only "periodic and unscheduled" visitation. By her motion, Ms. Webb further alleged that Mr. Pewitt left the child with his current wife, who worked in a beauty salon. Ms. Webb asserted that the minor child had myriad health issues, including asthma and allergies, and that the child should not be allowed around animals or around the products used in Mr. Pewitt's wife's salon. On July 7, 2006, Mr. Pewitt filed an answer to the motion to set visitation, wherein he denied the material allegations made by Ms. Webb. On January 23, 2007, the trial court entered an agreed order, which provided that Mr. Pewitt would pay $228.00 per month in child support. This order also incorporated a permanent parenting plan. The plan provided, in relevant part, that Ms. Webb would be the child's primary residential parent, with Mr. Pewitt having equal parenting time, and the parties making joint decisions concerning the child.

On February 18, 2009, Mr. Pewitt filed a motion to modify the parenting plan, which motion gives rise to the instant appeal. The motion alleged, in relevant part, as follows:

> 5. Sometime around November 2007, it appeared that [Ms. Webb] started having some difficulties in her life and since that time has changed residences five...or six...times.
> 6. In addition, [Ms. Webb] has separated from her current husband and there is a pending divorce....
> 7. [Mr. Pewitt] has reason to believe that [Ms. Webb] is partying to excess and possibly using illegal substances or abusing prescription substances.
> 8. Beginning in January of 2008, [Mr. Pewitt] began having the child the majority of the time with [Ms. Webb] only keeping the child from four...to approximately ten...days per month.
> 9. When [Ms. Webb] did not or does not have the minor child with her, she goes for days without calling and checking on the child.
> 10. [Ms. Webb] has advised [Mr. Pewitt] of various bouts of unemployment, job or career changes and even addressed enrolling in the Army and having the child live with [Mr. Pewitt].
> 11. [Ms. Webb] is currently residing with her paramour who has a criminal history [of] drugs and is believed to be currently unemployed as is [Ms. Webb].

12. [Mr. Pewitt] has reason to believe that [Ms. Webb] has been involved in several domestic altercations with her ex-husband and her current paramour since the fall of 2007, which is not in the child's best interest....

13. While in [Ms. Webb's] care, the minor child was late or absent from school on numerous occasions because [Ms. Webb] would not get up to take the child to school in a timely [manner]. [Ms. Webb] would also send the child to school unprepared, being without his backpack.

14. [Mr. Pewitt] has been to [Ms. Webb's] residence on several occasions to retrieve the child and had to beat on the door to wake [Ms. Webb] up. When he entered the residence, he saw numerous beer cans and liquor bottles laying around her home while the child was present. [Mr. Pewitt] has reason to believe that [Ms. Webb] has had inappropriate parties while the child was present.

On April 20, 2009, Ms. Webb filed a response to Mr. Pewitt's motion, wherein she denied the material allegations made by Mr. Pewitt, and also stated that she "was involved in a[n] injury at work...which resulted in a worker's compensation claim." Despite the alleged injury, Ms. Webb stated that she had secured housing and employment, and that the "child was never placed in harms way, nor was the child neglected or not taken care of."

The parties attempted to resolve the parenting issues through mediation. However, the report of the mediator, filed on December 7, 2009, indicates that no issues were resolved. Consequently, the matter proceeded to hearing before the court on January 21, 2010 and on April 22, 2010. The trial court entered an order on July 12, 2010, wherein it found, in relevant part, as follows:

1. This is a contest between two parents for primary parenting of a seven...year old child. This is the only child of the marriage between the Mother and Father before the Court today.

The mother is twenty-five...years of age.

The father is thirty-three...years of age. He is married to Paula Pewitt who is also a figure in this matter. She is a cosmetologist. [Mr. Pewitt and Paula Pewitt] have been married for four years....

The Mother divorced this child's father and remarried. While married to her second husband she became pregnant with her second child who is presently three...years of age and resides

one half the time with the mother and one half the time with the child's father, Mr. Webb.

During the time mother was married to the second husband[ Mr. Webb,] after her separation [but] prior to [] divorce[,] she became romantically involved with Mr. Josh Taylor. As a result of their involvement she became pregnant with twin girls who [were born in] September 2009.

She began living with Mr. Taylor at the end of 2008. Mr. Taylor was convicted in 2006 for a drug felony. The Mother lived with Mr. Taylor while he was on probation for the felony drug charge and paid $2,700.00 in fines for him. Mr. Taylor has not worked while he and the Mother have been together. He is responsible for the day to day care of the Mother's three...year old child [born to Mother and Mr. Webb] and the twin girls born to the Mother and Mr. Taylor.

The Mother and her second husband were involved in an altercation in 2008 when the Mother was charged with assaulting him with a poker. The charge of Domestic Assault was dismissed without adjudication and [was] expunged from her record.

In June of 2009, the Mother was involved in an altercation in which Josh Taylor assaulted the Mother while she was approximately six...months pregnant with his twins. This assault charge resulted in Mr. Taylor serving forty-five...days in jail. While incarcerated, in June of 2009, the Mother requested the...Court to lift a No Contact Order which was between the Mother and Josh Taylor which the Court did. This Court is quite taken by the Mother's attempt to downplay the violence of her paramour, which this Court finds [must have been] substantial to result in Mr. Taylor serving forty-five...days in jail.

The Mother has acknowledged that time [when] she was responsible for taking the child to school and the Court is concerned relative to her lackadaisical attitude relative to the child's excessive absences and tardies. The court finds that this child was left at school on two...separate occasions while in the Mother's care which resulted in the principal having to call home.

\*                          \*                          \*

-4-

The matter is relative to a child who is seven...years old and apparently troubled based upon his threatened suicide. The Court is troubled, the parents are troubled and the attorneys are troubled and there is concern relative to this child. This is a child...who is having to deal with two...new male figures in the last three...to four...years. This is a young man dealing with substantial problems. The Court is not saying this to be critical of anyone, especially the Mother. The little fellow needs some relief instead of what is good for the parent on a given day.

Based upon these findings, the trial court modified the parenting plan to name Mr. Pewitt the primary residential parent. Ms. Webb was provided parenting time every other weekend during the school year, for a total of ninety-five days per year. Ms. Webb was also given parenting time during school holidays and summers. The July 12, 2010 order further states that "[t]he Court shall issue a written finding of facts, if needed." Concurrent with the court's order modifying the parenting plan, it also filed a consent order, adjudicating issues related to child support and the parties' respective arrearage. No issues have been raised on appeal concerning child support.

Following entry of the orders, Ms. Webb filed a motion with the court, asking the court "to grant her a new trial and or to reconsider the Court's ruling...." This motion was later voluntarily withdrawn. On appeal, Mr. Pewitt asserts, *inter alia*, that Ms. Webb's withdrawal of this motion constitutes a waiver of some of her appellate issues. We disagree. While a litigant may move the trial court for reconsideration of its decision or for relief from judgment under Tenn. R. Civ. P. 59, a Rule 59 motion is not necessary to preserve the appellate issues when the matter was tried without a jury. Rather, only in jury trials is the appellant required to raise certain issues specifically in a motion for new trial in order to have this Court review those issues on appeal. Tenn. R. App. P. 3(e). Consequently, the fact that Ms. Webb withdrew a motion that was not mandatory does not constitute a waiver of the issues raised therein when the case was tried by the court, sitting without a jury. We now turn to the issues raised by Ms. Webb, as set out in her appellate brief:

1. Whether the Chancery Court erred by failing to state a material change of circumstances had occurred and what material change the Court relied upon in its ruling.

2. Whether the Chancery Court erred by failing to make or state findings of facts supporting a material change of circumstance.

3. Whether the Chancery Court erred in consideration of the

-5-

Mother's second marriage, second child, second divorce and new relationship in which twins were born, to be detrimental to the welfare of the child in this case.

4. Whether the Chancery Court erred in finding a material change of circumstances that affected the child's well-being in a meaningful way.

5. Whether the Chancery Court erred in failing to consider the effect the ruling would have upon the child as well as the effect it is having upon his siblings.

6. Whether the Chancery Court erred in not following the Tennessee Rules of Civil Procedure, Rule 52.01–requiring written findings of fact and separately its conclusion of law to support its ruling directing entry of the appropriate judgment.

When addressing a petition to modify the custody of a child, the court must follow a two-step process. "The threshold question is whether a material change in circumstances has occurred since the entry of the prior [custody] order." *Boyer v. Heimermann*, 238 S.W.3d 249, 259 (Tenn. Ct. App. 2007). Only if the court finds a material change in circumstances does it proceed to consider whether changing custody is in the child's best interest. *Id.*

The determination of whether a material change in circumstances has occurred is a factual question. *In re: T.C.D.*, 261 S.W.3d 734, 742 (Tenn. Ct. App. 2007). The trial court's findings of fact are reviewed *de novo* on the record; those findings are presumed to be correct unless the preponderance of the evidence is otherwise. *Kendrick v. Shoemake*, 90 S.W.3d 566, 570 (Tenn. 2002); *Hass v. Knighton*, 676 S.W.2d 554, 555 (Tenn. 1984); Tenn. R. App. P. 13(d). In weighing the preponderance of the evidence, the trial court's findings of fact that are based on witness credibility are given great weight, and they will not be overturned absent clear and convincing evidence to the contrary. *In Re: Adoption of A.M.H.*, 215 S.W.3d 793, 809 (Tenn. 2002).

Decisions involving the custody of a child are among the most important decisions faced by the courts. *Steen v. Steen*, 61 S.W.3d 324, 327 (Tenn. Ct. App. 2001). When faced with a request to modify custody, courts generally favor the existing custody arrangement, on the premise that children tend to thrive in a stable environment. *Aaby v. Strange*, 924 S.W.2d 623, 627 (Tenn. 1996); *Hoalcraft v. Smithson*, 19 S.W.3d 822, 828 (Tenn. Ct. App. 2001). Thus, there is "a strong presumption in favor of continuity of placement" of a child.

***Morris v. Morris***, No. M2001-02275-COA-R3-CV, 2002 WL 31059222, at *2 (Tenn. Ct. App. Sept. 17, 2002) (quoting ***Bah v. Bah***, 668 S.W.2d 663, 666 (Tenn. Ct. App. 1983)); *see also* Tenn. Code Ann. § 36-6-106(a)(3) (listing continuity as a factor in custody decisions). An existing custody order is considered *res judicata* on the facts as they existed at the time the order was entered. ***Steen***, 61 S.W.3d at 327. However, "Tennessee courts are statutorily authorized to modify custody arrangements as necessitated by intervening changes in circumstances." ***Conner v. Conner***, No. W2007-01711-COA-R3-CV, 2008 WL 2219255, at *2 (Tenn. Ct. App. May 29, 2008). The statute governing requests for such a modification provides:

> If the issue before the court is a modification of the court's prior decree pertaining to custody, the petitioner must prove by a preponderance of the evidence a material change in circumstances. A material change in circumstances may include, but is not limited to, failures to adhere to the parenting plan or an order of custody and visitation or circumstances that make the parenting plan no longer in the best interest of the child.

Tenn. Code Ann. § 36-6-101(a)(2)(B) (2005). Therefore, under the statute, the party seeking modification of the parenting plan to change the designation of the primary residential parent has the burden of proving a material change in circumstances. *See **Taylor v. McKinnie***, No. W2007-01468-COA-R3-JV, 2008 WL 2971767, at *3 (Tenn. Ct. App. Aug. 5, 2008) (citing ***Kendrick***, 90 S.W.3d at 570).

Tennessee Code Annotated Section 36-6-101(a)(2)(C) is the relevant statutory provision regarding what constitutes a material change of circumstance in the context of changing the parenting schedule, and it provides, in relevant part, as follows:

> A material change of circumstance does not require a showing of a substantial risk of harm to the child. A material change of circumstance for purposes of modification of a residential parenting schedule may include, but is not limited to, significant changes in the needs of the child over time, which may include changes relating to age; significant changes in the parent's living or working condition that significantly affect parenting; failure to adhere to the parenting plan; or other circumstances making a change in the residential parenting time in the best interest of the child.

Our Supreme Court has explained that:

While "[t]here are no hard and fast rules for determining when a child's circumstances have changed sufficiently to warrant a change of his or her custody," the following factors have formed a sound basis for determining whether a material change in circumstances has occurred: the change "has occurred after the entry of the order sought to be modified," the change "is not one that was known or reasonably anticipated when the order was entered," and the change "is one that affects the child's well-being in a meaningful way." We note that a parent's change in circumstances may be a material change in circumstances for the purposes of modifying custody if such a change affects the child's well being.

*Kendrick*, 90 S.W.3d at 570 (citation omitted).

Before reaching the issue of whether the facts support a finding of a material change in circumstances, we first address Ms. Webb's issues concerning whether the trial court's order is sufficiently specific in terms of the findings made therein. Ms. Webb first argues that the court failed to make necessary findings of fact as required under Tennessee Rule of Civil Procedure 52.01. This rule states, in relevant part, that:

In all actions tried upon the facts without a jury, the court shall find the facts specially and shall state separately its conclusions of law and direct the entry of the appropriate judgment. The findings of a master, to the extent that the court adopts them, shall be considered as the findings of the court....

While we concede that the trial court's statement that "[t]he Court shall issue a written finding of facts, if needed," is somewhat misleading, the inclusion of this statement does not compel us to conclude that the trial court failed to follow the mandates of Tennessee Rule of Civil Procedure 52. Despite this statement, as set out in full context above, the trial court did make specific findings in its order. From our reading, these findings clearly detail the trial court's basis for its determination that there was a material change in circumstance so as to justify a modification in the custody arrangement.

Ms. Webb also argues that the trial court failed to allow the parties to give closing statements in this case. We note that, before ending the proceedings, the trial court specifically asked if there was anything further, to which Ms. Webb's attorney responded: "Not that I've reviewed today. No sir." In fact, neither attorney requested a closing argument, nor did either party request additional findings of fact other than those addressed

by the court in its statements from the bench. From the record, we conclude that the trial court's findings are sufficient to satisfy the requirements of Rule 52. However, we note that the court's order does not specifically state that a material change in circumstance exists, nor does it state that modification of custody is in the child's best interest. While the better practice to ensure full compliance with Rule 52 is for the trial court to make specific findings of a material change in circumstance and best interest, from the findings that the court did make, we are able to deduce a material change in circumstance. Additionally, based on the court's decision to modify custody as well as its statement that the child needs stability and "relief," we can infer that the court found its custody decision to be in the child's best interest. *See, e.g., **Graham v. Graham***, No. 03A01-9412-CV-00448, 1995 WL 447785 (Tenn. Ct. App. July 31, 1995) (holding that "[w]hile it is true the Court did not specifically find it was in the child's best interest that custody be awarded to the father, this may be inferred from his opinion from the bench, as well as his act in modifying custody.").

Turning to the record, we conclude that there is sufficient evidence to support the court's finding that there is a material change in circumstances such that modification of custody is warranted in this case. To contradict the courts findings, Ms. Webb first argues that the trial court erred in considering her second marriage, her second divorce, and the birth of a second child. We disagree. Because child custody matters are of the utmost importance, a court should consider every relevant fact in reaching its decision thereon. Here, the fact that Ms. Webb re-married after her divorce from Mr. Pewitt, had a second child, and later divorced her second husband bears upon the stability of the child at issue. There is no indication in this record that the trial court made any character assessment of Ms. Webb based upon these facts; rather, the court considered Ms. Webb's subsequent marriage and the birth of another child only insofar as those changes might be material to this child's welfare. From our reading of the record, following her divorce from Mr. Pewitt, Ms. Webb's life has been very unsettled. Not only has she married and divorced a second time, but she has also been living with her paramour, with whom she has twin girls. The record further indicates that Ms. Webb has been involved in several domestic disturbances–a fact that troubled the trial court and also concerns this Court. Moreover, from the record, Ms. Webb's work history has been less than stable. Additionally, she has moved homes some nine times since the entry of the initial custody order. Furthermore the record indicates that Ms. Webb has been less than vigilant in ensuring that this child attends school. From the totality of the proof presented, we conclude that the evidence preponderates in favor of the trial court's finding that a material change in circumstances exists such that primary residential custody with Ms. Webb is no longer tenable.

Concerning the child's best interest, it is apparent from the record that this child is troubled. As noted in the court's order, he has threatened suicide. In addition, he suffers from certain health issues that require monitoring. It is readily apparent that this child needs

stability above all. Considering the relative lifestyles of the parties, as revealed by the record, we conclude that Mr. Pewitt's lifestyle is more conducive to stability than that of Ms. Webb. Mr. Pewitt is remarried and his marriage appears to be stable. He is employed and has a permanent residence. From the totality of the circumstances, our *de novo* review of the record persuades us that the evidence preponderates in favor of the trial court's determination that it is in the child's best interest for Mr. Pewitt to serve as the primary residential parent.

For the foregoing reasons, we affirm the order of the trial court. Costs of this appeal are assessed against the Appellant, Whitney W. Webb, and her surety.

_____
J. STEVEN STAFFORD, JUDGE