IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
February 22, 2013 Session

# BEVERLY LYNN DURHAM (HESS) COOK v. JAMES PRESTON HESS, III

**Appeal from the Chancery Court for Williamson County**
**No. 20386     Derek K. Smith, Judge**

---

**No. M2012-01554-COA-R3-CV - Filed April 24, 2013**

---

Father of adult child with spina bifida and other impairments challenges the trial court's order requiring him to continue to pay child support. We have concluded that the trial court had subject matter jurisdiction in this case. We further find no error in the trial court's determination that the adult child is severely disabled, in its calculation of child support, or in its determination of the amount owed by Father for past uncovered medical expenses.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which PATRICIA J. COTTRELL, M.S., P.J., and FRANK G. CLEMENT, JR. J., joined.

Stanley Allen Kweller, Nashville, Tennessee, for the appellant, James Preston Hess.

Lawrence James Kamm and Helen Sfikas Rogers, Nashville, Tennessee, for the appellee, Beverly Lynn Durham (Hess) Cook.

## OPINION

### FACTUAL AND PROCEDURAL BACKGROUND

Beverly Lynn Durham (Hess) Cook ("Mother") and James Preston Hess, III ("Father") were divorced in 1991. A marital dissolution agreement, incorporated into the final decree, includes the following provision regarding child support:

> It is agreed that Husband shall pay Wife as child support the sum of Eight Hundred Fifty ($850.00) Dollars per month. Child support payments are to be paid no later than the fifth (5th) day of each month. It is agreed between the

Parties that the amount of child support is in conformity with child support guidelines. *Due to the minor child's severe handicap, such support shall not be reduced or pro-rated without further order of the Court, and shall continue until the child attains emancipation determined by the Court.*

(Emphasis added). The amount of child support Father was required to pay was modified several times over the years.

The parties' only child, Preston, was born in January 1989 and has spina bifida and related physical and mental problems. He turned eighteen years old on January 18, 2007; the high school class of which Preston was a member when he turned eighteen graduated in May 2007. Preston did not receive his diploma until December 2, 2007, after the school waived an algebra requirement.

Mother filed a petition for civil contempt on December 31, 2007 alleging that Father had not paid child support since May 2007 and was, therefore, in arrears. She asserted that Father was legally required to pay child support until Preston graduated from high school and that special circumstances existed that would require Father's child support obligation to continue. The relief requested by Mother included the indefinite extension of Father's child support obligation. Father filed an answer and counter-petition for emancipation. In March 2008, the trial court entered an order consolidating the contempt action with a conservatorship action, previously filed by Mother, for purposes of discovery and final hearing.[1]

The matter was heard by a special master over two days in February and May 2010. The special master entered an order detailing her findings on October 13, 2010. The master concluded that Preston was severely disabled within the meaning of Tenn. Code Ann. § 36-5-101(k) and that Father was financially able to pay child support. Father's child support obligation was set at $926.00 per month. Although the special master determined that Father had no obligation to pay for Preston's health insurance or uncovered medical expenses after December 2007, Father was found to be liable to Mother in the amount of $6,318.00 for child support arrearage, $626.78 for insurance premium arrearage, and $9,546.16 for medical payment arrearage.

The special master's report did not become final until April 8, 2011, when the master entered a final report determining the amount of attorney fees owed by Father to Mother. Father appealed the special master's final report on April 18, 2011. He filed supplemental

[1]This court affirmed the trial court's establishment of a conservatorship for Preston in a decision filed in July 2012. *In re Hess, IV*, No. M2011-01561-COA-R3-CV, 2012 WL 3104917 (Tenn. Ct. App. July 31, 2012).

objections on November 29, 2011 along with a motion to dismiss for lack of subject matter jurisdiction. On June 18, 2012, the trial court entered an order rejecting Father's objections and adopting the findings and recommendations of the special master.

On appeal, Father argues that the trial court lacked subject matter jurisdiction over this case. Father further asserts that the trial court erred in finding Preston to be severely disabled, in calculating the amount of child support, and in determining the amount of medical expenses to be charged to Father.

STANDARD OF REVIEW

We review the trial court's findings of fact de novo with a presumption of correctness unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993). Moreover, we "give great weight to the trial court's assessment of the evidence because the trial court is in a much better position to evaluate the credibility of the witnesses." *Boyer v. Heimermann*, 238 S.W.3d 249, 255 (Tenn. Ct. App. 2007). We review questions of law de novo with no presumption of correctness. *Nelson v. Wal-Mart Stores, Inc.*, 8 S.W.3d 625, 628 (Tenn. 1999). The issue of subject matter jurisdiction constitutes a question of law. *Northland Ins. Co. v. State*, 33 S.W.3d 727, 729 (Tenn. 2000).

ANALYSIS

(1)

The threshold question for determination is whether the trial court had jurisdiction to set child support in this matter. Father argues that, because Mother did not file her petition to extend child support until after his obligation under the original child support order had terminated, the trial court lacked subject matter jurisdiction to order him to pay child support.

In asserting that the trial court lacked subject matter jurisdiction, Father relies principally on two cases: *In re Conservatorship of Jones*, No. M2004-00173-COA-R3-CV, 2004 WL 2973752 (Tenn. Ct. App. Dec. 22, 2004), and *Shaw v. Shaw*, No. W2010-02369-COA-R3-CV, 2011 WL 4379052 (Tenn. Ct. App. Sept. 21, 2011). In both of these cases, the divorce action was filed after the child(ren) had reached the age of majority, and the divorce court ordered a parent to pay child support for a disabled child(ren). *Jones*, 2004 WL 2973752, at *1; *Shaw*, 2011 WL 4379052, at *1. In both cases, this court overturned the trial court's order on the basis that the court lacked subject matter jurisdiction. *Jones*, 2004 WL 2973752, at *13; *Shaw*, 2011 WL 4379052, at *4.

The results reached in *Jones* and *Shaw* were based upon this court's construction of the pertinent statutory language, now found at Tenn. Code Ann. § 36-5-101(k), the provisions of which have since been amended. The pertinent current provisions of Tenn. Code Ann. § 36-5-101(k) are set out below, with the 2008 amendments (not applicable in *Jones* and *Shaw*) appearing in italics:

(1) Except as provided in subdivision (k)(2), the court may continue child support beyond a child's majority for the benefit of a child who is handicapped or disabled, as defined by the Americans with Disabilities Act, until such child reaches twenty-one (21) years of age.

(2) Provided, that such age limitation shall not apply if such child is severely disabled and living under the care and supervision of a parent, and the court determines that it is in the child's best interest to remain under such care and supervision and that the obligor is financially able to continue to pay child support. In such cases, the court may require the obligor to continue to pay child support for such period as it deems in the best interest of the child; *provided, however, that, if the severely disabled child living with a parent was disabled prior to this child attaining eighteen (18) years of age and if the child remains severely disabled at the time of entry of a final decree of divorce or legal separation, then the court may order child support regardless of the age of the child at the time of entry of the decree.*

(Emphasis added). In *Jones*, this court emphasized that the statute authorized a court to "*continue* child support" for a severely disabled child beyond the age of majority. *Jones*, 2004 WL 2973752, at *11. The court, therefore, concluded that "a trial court has the authority to 'continue child support' for a severely disabled child only when an order awarding support was entered when the child was a minor, or as a modification of any other valid child support order." *Id.* at *13.

Father fails, however, to take into account a fact that distinguishes the present case from *Jones* and *Shaw*–namely, the language of the parties' marital dissolution agreement. As this court recognized in *Jones*, parties are free to incorporate into their marital dissolution agreement an agreement that a non-custodial parent will provide support to a disabled adult child beyond majority. *Id.*; *see also Lichtenwalter v. Lichtenwalter*, 229 S.W.3d 690, 693 n.3 (Tenn. 2007); *In re Conservatorship of Lovlace*, No. M2003-01274-COA-R3-CV, 2004 WL 1459409, at *3 (Tenn. Ct. App. June 28, 2004). Such agreements are enforceable as contractual obligations. *Lichtenwalter*, 229 S.W.3d at 693 n.3; *Jones*, 2004 WL 2973752, at *13. In the present case, the language of the parties' marital dissolution states: "Due to the minor child's severe handicap, such support shall not be reduced or pro-rated without further

-4-

order of the Court, and *shall continue until the child attains emancipation determined by the Court*." Under this language, Father's obligation to pay child support continued until Preston "attain[ed] emancipation determined by the Court." Thus, even though Preston had reached the age of eighteen and his high school class had graduated,[2] Father's child support obligation continued until the trial court determined otherwise.

Because Father and Mother had agreed that Father would continue to pay child support after Preston reached majority until the trial court made a determination, the child support order remained in effect at the time when Mother filed her petition, and the trial court therefore had jurisdiction to extend the support obligation.

(2)

The next issue for our determination is whether the trial court erred in making the determination that Preston is severely disabled within the meaning of Tenn. Code Ann. § 36-5-101(k)(2).

The special master, whose report was adopted by the trial court, heard testimony from a number of witnesses: Mother; Father; Preston; Mother's husband; Father's wife; a representative from Home Depot, where Preston worked part time; Dr. Nicholas Sieveking, a psychologist who performed an occupational evaluation; Dr. Anne Fottrell, treating psychiatrist; and a private investigator. The special master also considered the deposition testimony of Dr. Raymond McNeely, Preston's treating pediatrician for 20 years. The master's findings of fact include the following:

> Preston is a 21 year old man. He was born with spina bifida and has suffered his entire life from the resulting physical and mental problems. He has had over 25 surgeries during his lifetime. He has been hospitalized for associated lung, bladder and bowel infections/problems three times in the last two years. He must catheterize his bladder several times a day and must evacuate his bowels through a stoma in his stomach while in the bathtub. He is completely wheelchair bound and must use an assist bar getting in and out of bed.

---

[2]Tenn. Code Ann. § 34-1-102(b) provides: "The duty of support shall continue until the child graduates from high school or the class of which the child is a member when the child attains eighteen (18) years of age graduates, whichever occurs first."

. . .

Preston graduated from high school with a general education diploma on December 2, 2007, with the school waiving a required credit in algebra. He graduated 259th in his class of 283 with a cumulative grade point average of 1.817. His ACT scores reflect an overall score of 12, which is in 2nd percentile. The latest IQ tests, administered in 2009, reflect an overall IQ of 91, which is in the 27th percentile. He attempted college at Columbia State but was unsuccessful. He attempted 12 hours, passed 1 hour and earned a grade point average of .375.

Preston obtained a driver's license and drove for several months. After a hit and run accident and an accident where Preston took his hands from the controls to text message, his mother decided to discontinue his driving privileges. That decision was in the best interest of Preston's safety and welfare.

Preston has had a checking account for his earnings but has a history of allowing other people access to his debit card. On one occasion, over $1,500.00 was taken from his checking account by a person he had "loaned" his debit card to. Preston is not able to manage or balance his account effectively.

At any given time, Preston's friends have been and are much younger in age. Preston does not have the emotional maturity of a 21 year old. He is easily influenced to his detriment and is not capable of determining who is trustworthy.

Preston has a difficult time remembering to perform the most essential tasks. He has difficulty waking up and dressing on his own on a timely basis. While he does not object to taking medication, he does not remember to take his medications on his own. If left alone, he will often "forget" to eat. He does not remember to perform daily routine tasks, such as washing and folding his clothes or performing routine hygiene. He does not always remember to catheterize his bladder regularly, which leads to bladder infections and accidents. He is not able to use the kitchen stove because he does not remember to turn off the controls. His mother has been unsuccessful in teaching Preston even the smallest tasks, such as ordering supplies or making doctor's appointments. Preston does not understand the basic "cause and effect" of his actions, whether it be cooking, eating, driving, working or dealing with his peers. Because of his mental disability, positive and negative reinforcement and traditional behavior adaptation efforts have proved to be unsuccessful. Preston has a very positive attitude but is unable to make a distinction in everyday life between what is

necessary for his health and well-being and what he wants to do.

Preston has worked at Home Depot since June of 2007. Home Depot has made accommodations for him and does not require him to perform tasks that regular associates would be required to perform, such as lifting, sorting, and operating the cash register. They allow him to work only in areas where a wheelchair will operate. He greets customers and assists them in finding what they are shopping for. Home Depot has accommodated him by allowing him frequent breaks for catheterization and by allowing him to leave work if a bowel accident occurs. Home Depot records reflect that he has received periodic raises but nothing in the record or testimony suggests these are merit raises. His yearly evaluations consistently reflect unacceptable performance regarding his knowledge of the store, product, systems and procedures, and self development and time management. His average hours per week [have] increased from 19 per week in 2007 to 24 per week in 2009. His beginning pay rate was $9.00 and as of January, 2010 was $9.99 per hour.

Dr. Nicholas Sieveking was employed by Mr. Hess to assess Preston's employment capacity. His original written report reflects an IQ of 104 which is in the 61st percentile. During testimony, Dr. Sieveking acknowledged that an error had been made by his office and the actual IQ score as 91, in the 27th percentile. The entire report was based on a substantially erroneous test score. Dr. Sieveking's ultimate testimony was that Preston was capable of working at the exact kind of job he presently holds. He did not indicate that Preston was underemployed nor that he was capable of holding a significantly more difficult job or work more hours.

Preston is clearly a likable, positive person. He is very vocal and has an excellent vocabulary. He is able to communicate effectively. However, the evidence is likewise clear that Preston is not capable of making mature decisions regarding his property or his environment. He does not have the emotional or mental ability to make rational decisions regarding his health. He is not able to plan and carry out appropriate day to day activities that are necessary for his well-being. The evidence shows that Preston is currently and will continue to be unable to live independently. Without intervention, Preston would be a danger to himself, to his health, to his physical and mental well-being, and to his emotional security. He requires a competent adult to:

> 1. protect, monitor and plan his daily physical needs: to supervise preparation and guarantee consumption of meals; to make sure his

surroundings and clothes are clean and sanitary; to assist and guide him in waking, dressing, and getting to work on time; and to assist him in bathing, bowel evacuation, and getting in and out of bed.

2. protect him and supervise him in dealing with: his earnings; his expenditure for things needed rather than things desired; his friends and internet contacts.

3. protect him and make rational decisions regarding his medical care and treatment.

The evidence is clear that Mrs. Hess has provided Preston with the tools to reach his full potential; her guidance and assistance have in no way limited Preston nor have her efforts shielded or protected him in a negative way. The physical environment provided by Mother in her home is necessary for Preston's health and well-being. Her support has been the primary reason Preston is able to withstand the physical demands of his job at Home Depot. Preston is working to his full qualifications and mental and physical capabilities. His ability to work in no way negates his disability; it does indeed show that Preston and his mother have made every effort for him to live and work to his full capability. The Court specifically finds that the evidence does not support any theory that Preston's behavior is somehow "normal" for a twenty one year old, or that he is no different than any other 21 year old other than being confined to a wheelchair, or that he is capable of more than given credit for.

Based upon these factual findings, the special master reached the conclusion that Preston was severely disabled within the meaning of Tenn. Code Ann. § 36-5-101(k)(2). As part of this legal conclusion, the special master specifically found that Preston had "a functional impairment of life activities of self-care, learning, mobility, self-direction, capacity for independent living, and economic self-sufficiency."[3] The special master further concluded that Preston was unable to support himself "to the extent necessary to provide the physical environment and extra medical and hygienic needs for his well-being," and that it was necessary for him to continue to live with Mother and to remain under her supervision and care.

Tennessee Code Annotated § 36-5-101(k)(2) does not contain a definition of the term

---

[3]The special master drew guidance from criteria contained in the mental health statutes in effect at that time. *See* Tenn. Code Ann. § 33-1-101(24)(A) (2010). While this provision has since been repealed, similar criteria appear in the mental health regulations. *See* Tenn. Comp. R. & Regs. 0940-01-06-.04(10).

"severely disabled." Father cites several Tennessee cases in support of his position that Preston is not severely disabled, but we find that only one of those cases bears on the issue of when a person is severely disabled within the meaning of Tenn. Code Ann. § 36-5-101(k)(2).[4] *Finn v. Bundy*, No. M2003-01368-COA-R3-CV, 2005 WL 418793, at *1 (Tenn. Ct. App. Feb. 22, 2005), concerned a father's obligation to support his son, Dewayne, after he graduated from high school. The father argued that Dewayne was not severely disabled within the meaning of Tenn. Code Ann. § 36-5-101(p), now Tenn. Code Ann. § 36-5-101(k). *Id.* Because the trial court did not make specific findings of fact in requiring father to continue paying the support, this court had to make a de novo review of the facts. *Id.* at *2.

Dewayne had numerous medical problems, including spina bifida with encephalopathy, cerebral palsy, hydrocephalus, myelodysplasia, and a neurogenic bladder. *Id.* He was also mentally retarded and had impaired speech and fine motor skills. *Id.* Psychological testing showed Dewayne's mental age as 5 to 8 years old. *Id.* He completed high school through a special education program and worked in a sheltered workshop. *Id.* at *3. Dewayne's physician submitted a report stating that Dewayne was "unable to live without adult supervision and assistance." *Id.* According to the physician, Dewayne was unable to "comprehend or cope with danger in his environment," "prepare a meal competently or safely," "finish a meal without assistance due to becoming distracted," or "operate sophisticated machinery, (*e.g.* washing machine, car, motorcycle, or bicycle) due to lack of comprehension and/or coordination." *Id.* Based on the evidence, this court concluded that Dewayne was severely disabled:

> The evidence also establishes that Dewayne is severely disabled. Although Mr. Finn testified that he thought his son was capable of working to support himself, that opinion is totally unsupported by any evidence in the record. Dewayne's work at the sheltered workshop, while important and beneficial, is not comparable to a job that could provide his necessary financial support.

*Id.* After determining that father was able to pay support, this court affirmed the decision of the trial court. *Id.* at *3-4.

In the present case, unlike in *Finn v. Bundy*, the special master's report adopted by the

---

[4]In *In re Conservatorship of Jones*, 2004 WL 2973752, at *3, it was undisputed that the parties' two adult children were severely disabled within the meaning of the relevant statutory provision. Likewise, in *Vaughn v. Vaughn*, No. W2007-00124-COA-R3-CV, 2008 WL 162543, at *1-2 (Tenn. Ct. App. Jan. 18, 2008), the court had to determine whether the trial court erred in ordering an upward deviation in child support for the parties' adult daughter; there was no dispute as to whether the daughter was severely disabled. Thus, these two cases do not address the issue of what constitutes severe disability.

trial court includes detailed factual findings regarding Preston's condition. In this appeal, Father does not dispute or challenge specific factual findings, but disagrees with the trial court's conclusion that Preston is severely disabled. According to Father, the Tennessee cases and cases from other jurisdictions he cites "indicate [that] to be severely disabled the person must not be able to function on their own at all in society." Father argues that Preston's graduation from high school with a "regular" diploma and his earning capacity are inconsistent with a finding of severe disability under Tenn. Code Ann. § 36-5-101(k)(2).

We cannot agree with Father's position. As stated above, the only Tennessee case to address the meaning of "severely disabled" under Tenn. Code Ann. § 36-5-101(k)(2) is *Finn v. Bundy*. Moreover, the determination of whether a particular person is "severely disabled" requires an individualized assessment of how that person's physical and mental impairments affect his or her ability to live independently. In light of Preston's limitations, as found by the trial court and amply supported by the evidence, and his need for the continuing care and supervision of Mother, we find no error in the trial court's conclusion that Preston is severely disabled.

(3)

Father argues that the trial court erred in its calculation of child support by failing to account for Preston's earnings and other factors.

A trial court's determinations regarding the amount of child support or whether the amount should be increased or decreased are reviewed under an abuse of discretion standard. *See Vaughn v. Vaughn*, No. W2007-00124-COA-R3-CV, 2008 WL 162543, at *5 (Tenn. Ct. App. Jan. 18, 2008); *State ex rel. Anderson v. Taylor*, No. M2001-02193-COA-R3-CV, 2003 WL 21480087, at *4 (Tenn. Ct. App. June 27, 2003).

The previous child support order required Father to pay $702 per month as well as provide health insurance and pay 55% of uncovered medical expenses. The order on appeal increased Father's monthly child support to $926 per month but relieved him of any obligation for health insurance or uncovered medical expenses. In reaching this conclusion, the special master reasoned as follows:

> Preston has health insurance coverage through his Home Depot employment at a cost to him of $82.80 biweekly or approximately $179.40 per month plus [vision] and dental insurance of approximately $28 per month. Preston receives a social security payment of $440 per month and averages a net pay of approximately $656 per month at Home Depot. He also receives a stipend of $4,000 per year from ARC. The Clerk and Master has utilized the child support

worksheet as follows. For purposes of determining child support, Mrs. Hess's income should be $50,050.57 per year or $4170.88 per month. Mr. Hess's income should be $83,699.41 per year or $6,974.95 per month. Because Preston has income, the Clerk and Master has not allocated payments for health insurance benefits to either party. Nor has the Clerk and Master required Father to pay any portion of uncovered medical expenses. The Clerk and Master has given visitation time 100% to Mother as she will be solely responsible for all day to day care and responsibility as Conservator for Preston. The child support should be set at $926.00 per month. Father should not be required to pay any additional amounts for health insurance or uncovered medical expenses.

Father argues that the trial court erred in failing to adequately account for Preston's income from Home Depot. We begin by noting that, under Tenn. Code Ann. § 36-5-101(k)(3), a trial court "*may* use the child support guidelines" in setting support for a severely disabled child. (Emphasis added). The trial court did use the child support worksheet in this case, but was not required to hold strictly to the guidelines. Father asserts that the child support guidelines regarding the calculation of gross income when a child receives Social Security benefits (through a parent) address a situation analogous to that presented here and should be applied to Preston's income. The rule cited by Father, Tenn. Comp. R. & Regs. 1240-02-04-.04(3)(a)(5)(i), applies only to federal benefits springing from the parent's account, not to income drawn from the child's own disability. Under this rule, the income "shall be included as income to the parent on whose account the child's benefit is drawn and applied against the support obligation ordered to be paid by that parent." Tenn. Comp. R. & Regs. 1240-02-04-.04(3)(a)(5)(i). We fail to see a justification for application of this rule to income earned by Preston. In addition, the trial court expressly accounted for Preston's income by relieving Father of any obligation for health insurance or medical expenses.

Father further asserts that the trial court erred in calculating child support on the basis of Father having zero parenting time. According to Father's argument, the use of zero parenting time for Father rather than giving him standard parenting time is "inappropriate and unfair" since it is up to Preston and/or his conservator to determine whether Preston spends parenting time with Father. We disagree with this reasoning. The child support guidelines presume that "more parenting time by the ARP [alternate residential parent] results in greater expenditures which should result in a reduction to the ARP's support obligation." Tenn. Comp. R. & Regs. 1240-02-04-.04(7)(h)(3). Father spends no parenting time with Preston, and his child support obligation should reflect that fact because he is not spending money on Preston during parenting time.

Overall, we find no abuse of discretion in the trial court's calculation of child support. In light of all of his impairments, Preston is likely to incur significant medical expenses in the

future, and the trial court relieved Father of any obligation to contribute to Preston's health insurance or medical expenses. In so doing, the trial court adequately considered Preston's income.

(4)

Finally, Father argues that the trial court erred in determining the amount of past medical expenses for which he is responsible.

Under the previous order, Father was responsible for 55% of medical expenses not covered by insurance. Father's position on appeal is that Mother failed to prove the amount of medical expenses he owed because she failed to prove "what insurance applications were made, what insurance coverage existed, what insurance was available, what coverage they each provided and what payments were made with Explanation of Benefits (EOB)."

As the special master acknowledged in her report, the issue of uncovered medical expenses has been a "contentious matter" between the parties. According to Father's testimony, Preston became ineligible for coverage under Father's health insurance plan at the beginning of 2007. After this coverage ended, Mother enrolled Preston in TennCare; a year after he began working at Home Depot, Preston was enrolled in the company's insurance plan. Thus, during some periods of time, there were issues of secondary (and possibly even tertiary) insurance coverage. Father, Mother, and Father's wife gave testimony about how they would work out what was owed by Father. Father testified that Mother failed to provide him with adequate documentation of insurance coverages and/or to submit requests for payment to him during certain time periods.

To a certain extent, the amount of uncovered medical expenses owed by Father turns upon credibility determinations made by the trial court. Such determinations are given great deference by this court because the trial court is in the best position to assess witness credibility. *Boyer*, 238 S.W.3d at 255. Moreover, Father did not put on any evidence to refute the amount of out-of-pocket expenses presented as part of Mother's testimony. Some of these expenses are for items, such as diapers, for which insurance coverage had been denied in the past. The special master made the following pertinent findings:

> There is no question that the medical expenses submitted by Mother are medically necessary for Preston. It would be absurd to require Mother to file an insurance claim every month, year after year, for items she knows would not be covered by insurance, i.e. diapers, pads, etc. . . . Father has made no attempt to pay any of the uncovered medical expenses. Father's position that he should not be in contempt because Mother does not send timely or monthly bills is

-12-

untenable. He has made no attempt to pay even monthly payments toward the total amount claimed during the past two years. The evidence is sufficient to support Mother's claim for reimbursement.

The special master entered judgment against Father in the amount of $9,546.16 for medical payment arrearage, representing 55% of Mother's total out-of-pocket medical expenses from December 2007 until the hearing. The evidence does not preponderate against the trial court's determination.

CONCLUSION

The judgment of the trial court is affirmed in all respects. We grant Mother's request for an award of her attorney fees on appeal pursuant to Tenn. Code Ann. § 36-5-103(c) and remand for a determination of the appropriate amount of attorney fees. Costs of appeal are assessed against Father, and execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE