IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs December 2, 2025

IN RE TAYLOR G.[1]

**Appeal from the Juvenile Court for Shelby County**
**No. FF0269          W. Ray Glasgow, Judge**

_____

**No. W2024-01507-COA-R3-JV**

_____

This appeal arises from the trial court's modification of a permanent parenting plan in which the court designated the father as the primary residential parent and awarded the mother supervised visitation. We now affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court**
**Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and KENNY ARMSTRONG, J., joined.

Ada Johnson, Memphis, Tennessee, for the appellant, Ashlea G.

April L. Bostick, Memphis, Tennessee, for the appellee, Quarron H.

**OPINION**

**I.     BACKGROUND**

Ashlea G. ("Mother") and Quarron H. ("Father") engaged in a short-term relationship that resulted in the birth of Taylor G. ("the Child") in October 2020. While Father signed the Child's birth certificate, he was not otherwise involved in the raising of the Child until Mother filed a petition for child support in May 2021. Father responded by filing his own petition for custody and/or visitation in December 2021. This was the start of a tumultuous relationship between the parties, ultimately resulting in the Child's placement into the protective jurisdiction of the court.

---

[1] This court has a policy of protecting the identity of children by initializing their last name in certain proceedings.

In short, the trial court initially set child support and entered a permanent parenting plan, designating Mother as the primary residential parent and awarding Father 80 days of co-parenting time. Mother was unhappy with this arrangement and did not present the Child for several scheduled visits, prompting Father to pursue further court involvement. In turn, Mother repeatedly presented the Child to Le Bonheur Children's Hospital, alleging that Father had sexually abused her. The Child underwent at least two exams, after which a physician found no signs of sexual abuse on June 14, 2022, and again on June 24, 2022. Mother also presented the Child for testing for sexually transmitted diseases, requiring the placement of a catheter to obtain urine for testing. The results of these tests were negative.

Father then sought temporary custody of the Child and a psychological exam for Mother, citing Mother's refusal to adhere to the residential schedule and her repeated allegations of sexual abuse against him that were unfounded by medical personnel. The court agreed and granted Father temporary custody, pending further hearing. Father later sought designation as the primary residential parent, citing Mother's continued refusal to adhere to the court's orders concerning co-parenting time.

During the pendency of the proceedings, in July 2024, the Child was severely burned on her ankle while in Mother's care. Father's wife retrieved the Child from visitation with Mother, observed the injury, and promptly sought medical attention, where the Child made a spontaneous statement to the treating physician that "Mommy hurt my ankle because I peed on myself." On July 25, the court removed the Child and brought her into the protective jurisdiction of the court. The court placed the Child with Father and provided Mother with supervised visitation, pending a dependency and neglect proceeding.

The action proceeded to a hearing on September 13, 2024, at which time the court considered the dependency and neglect allegations and Father's petition for modification of custody. Father testified concerning his tumultuous relationship with Mother following the Child's birth. He claimed that Mother either failed to appear for scheduled visitations or brought her family along for the exchange of the Child and filmed the interactions between the parties. He stated that he regularly required police involvement to secure the peaceful transition of the Child for his co-parenting time. He recalled that Mother followed him back to his house after the first exchange for his co-parenting time. She, along with her relatives, confronted him and his relatives, resulting in a chaotic scene. He stated that Mother has improved her behavior to some extent but still records him at their scheduled exchanges. He stated that multiple claims were made against him with the Tennessee Department of Children's Services regarding his alleged sexual abuse of the Child; however, each claim was dismissed following an investigation.

Father stated that the Child exhibited signs of a speech delay. Mother advised him that the Child was receiving speech therapy; however, she refused to provide him the

provider's information.[2]  He testified that he placed her into daycare, which he believed assisted her in her speech development.  He currently lives with his wife, their daughter (age 3), and their son (age 2) in a three-bedroom home, where the Child shares a bedroom with her sister.  He is employed and able to provide financially for his family.  He professed a willingness to work with Mother for the best interest of the Child.

Mother testified that she kept the Child home to facilitate her bond with her.  She pursued services with Tennessee's Early Intervention Service ("TEIS") program to address the Child's speech delay; however, TEIS determined that the Child did not qualify for services.  She lives in a studio apartment with her mother and the Child, who sleeps in a crib.  She was in the process of purchasing a house with her mother to provide more room for the Child.  She is employed and able to provide for the Child.  She acknowledged that she used corporal punishment in the past but asserted that she no longer uses any form of physical punishment.  As a result of her court-ordered parenting education, she has learned new forms of discipline, including the use of "time-outs" and taking privileges away.

Mother acknowledged that she completed her mental health assessment, after which she received diagnoses of post-traumatic stress disorder; major depression, moderate without psychotic features; and anxious avoidance personality disorder.  She attends therapy, which was one of the recommendations from the assessment.  Mother asserted that she brought her family members to the exchanges for co-parenting time because Father was abusive toward her in the past.  She professed a willingness to work with Father; however, she maintained that she would continue to bring family members to witness the exchanges and asserted that Father's co-parenting time should be supervised based upon her continued belief that he had sexually abused the Child.  She stated that it was "hard to say" whether she believed Father should have a relationship with the Child.

Following the hearing, the trial court dismissed the dependency and neglect proceedings but found that a material change in circumstances had occurred that necessitated a change in the residential schedule and custody.  The court designated Father as the primary residential parent and awarded Mother supervised co-parenting time until such time as Mother established that she would no longer physically harm the Child or cause further unnecessary medical examinations based upon an unfounded belief that Father was abusing the Child.  This appeal followed.

---

[2] Mother later admitted that the Child never received speech therapy.

## II.     ISSUES

Mother raises two issues on appeal that we consolidate as follows:[3]

(A)     Whether the trial court erred in finding that a material change in circumstances had occurred that necessitated a change in custody.

(B)     Whether the trial court erred in ordering supervised visitation.

## III.     STANDARD OF REVIEW

"A trial court's determinations of whether a material change in circumstances has occurred and whether modification of a parenting plan serves a child's best interests are factual questions." *Armbrister v. Armbrister*, 414 S.W.3d 684, 692 (Tenn. 2013) (citing *In re T.C.D.*, 261 S.W.3d 734, 742 (Tenn. Ct. App. 2007)). Therefore, "appellate courts must presume that a trial court's factual findings on these matters are correct and not overturn them, unless the evidence preponderates against the trial court's findings." *Id.*; *see also* Tenn. R. App. P. 13(d). Likewise, trial courts have "broad discretion in formulating parenting plans" because they "are in a better position to observe the witnesses and assess their credibility." *C.W.H. v. L.A.S.*, 538 S.W.3d 488, 495 (Tenn. 2017) (citing *Armbrister*, 414 S.W.3d at 693). On appeal, we review a trial court's decision regarding parenting schedules for an abuse of discretion. *Armbrister*, 414 S.W.3d at 693 (citing *Eldridge v. Eldridge*, 42 S.W.3d 82, 88 (Tenn. 2001)). "An abuse of discretion occurs when the trial court . . . appl[ies] an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice." *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105 (Tenn. 2011). A trial court abuses its discretion in establishing a residential parenting schedule "only when the trial court's ruling falls outside the spectrum of rulings that might reasonably result from an application of the correct legal standard to the evidence found in the record." *Eldridge*, 42 S.W.3d at 88. We review questions of law de novo, affording the trial court's decision no presumption of correctness. *Armbrister*, 414 S.W.3d at 692 (citing *Mills v. Fulmarque*, 360 S.W.3d 362, 366 (Tenn. 2012)).

## IV.     DISCUSSION

### A. & B.

To modify an existing parenting plan, the trial court must first determine whether a material change in circumstances affecting the child's best interest has occurred. *Armbrister*, 414 S.W.3d at 697–98 (citing Tenn. Code Ann. § 36-6-101(a)(2)(C)). "[T]he change must have occurred after entry of the order sought to be modified." *Gentile v.*

---

[3] Father did not file a responsive brief.

*Gentile*, No. M2014-01356-COA-R3-CV, 2015 WL 8482047, at *5 (Tenn. Ct. App. Dec. 9, 2015) (citing *Caldwell v. Hill*, 250 S.W.3d 865, 870 (Tenn. Ct. App. 2007)). "[A] material change of circumstance for purposes of modification of a residential parenting schedule may include, but is not limited to, significant changes in the needs of the child over time, which may include changes relating to age; significant changes in the parent's living or working condition that significantly affect parenting; failure to adhere to the parenting plan; or other circumstances making a change in the residential parenting time in the best interest of the child." Tenn. Code Ann. § 36-6-101(a)(2)(C). "Facts or changed conditions which reasonably could have been anticipated when the initial residential parenting schedule was adopted may support a finding of a material change in circumstances, so long as the party seeking modification has proven by a preponderance of the evidence 'a material change of circumstance affecting the child's best interest.'" *Id.* at 704 (quoting Tenn. Code Ann. § 36-6-101(a)(2)(C)).

Where the issue before the court is modification of the primary residential parent ("custody"), then:

> the petitioner must prove by a preponderance of the evidence a material change in circumstance. A material change of circumstance does not require a showing of a substantial risk of harm to the child. A material change of circumstance may include, but is not limited to, failures to adhere to the parenting plan or an order of custody and visitation or circumstances that make the parenting plan no longer in the best interest of the child.

Tenn. Code Ann. § 36-6-101(a)(2)(B). *See Armbrister*, 414 S.W.3d at 703 (comparing the standard for an action to modify custody to the standard for an action to modify only a residential parenting schedule). "[T]rial courts have broad discretion in determining which parent should be the primary residential parent and appellate courts are reluctant to second guess a trial court's decision on this issue when so much depends on the trial court's assessment of the witnesses' credibility." *In re Shayla H.*, No. M2013-00567-COA-R3-JV, 2014 WL 2601564 at *5 (Tenn. Ct. App. June 9, 2014) (citations omitted).

Here, the record confirms that Mother failed to adhere to the residential schedule; submitted the Child for repeated, invasive medical examinations based upon an unfounded belief that Father had sexually abused the Child; and physically harmed the Child. Based on the foregoing, as well as our review of the entire record, we conclude that the evidence does not preponderate against the finding of a material change in circumstance sufficient to modify the residential schedule and the designation of the primary residential parent.

Once the trial court determines that there has been a material change in circumstance sufficient to modify the residential schedule or the designation of the primary residential parent, the second step in the modification analysis requires the court to determine whether any such modifications are in the child's best interest under the factors in Tennessee Code

- 5 -

Annotated section 36-6-106(a). *Boyer v. Heimermann*, 238 S.W.3d 249, 259–60 (Tenn. Ct. App. 2007). The best interest determination "is a fact-sensitive inquiry." *Steakin v. Steakin*, No. M2017-00115-COA-R3-CV, 2018 WL 334445 at *5 (Tenn. Ct. App. Jan. 9, 2018). The determination "'does not call for a rote examination of each of [the relevant] factors and then a determination of whether the sum of the factors tips in favor of or against the parent.'" *Id.* (quoting *In re Marr*, 194 S.W.3d 490, 499 (Tenn. Ct. App. 2005)). Rather, "'[t]he relevancy and weight to be given each factor depends on the unique facts of each case.'" *Id.* The trial court is directed to consider the following factors when conducting the best interest analysis:

(1)    The strength, nature, and stability of the child's relationship with each parent, including whether one (1) parent has performed the majority of parenting responsibilities relating to the daily needs of the child;

(2)    Each parent's [] past and potential for future performance of parenting responsibilities, including the willingness and ability of each of the parents [] to facilitate and encourage a close and continuing parent-child relationship between the child and both of the child's parents, consistent with the best interest of the child. In determining the willingness of each of the parents [] to facilitate and encourage a close and continuing parent-child relationship between the child and both of the child's parents, the court shall consider the likelihood of each parent [] to honor and facilitate court ordered parenting arrangements and rights, and the court shall further consider any history of either parent [] denying parenting time to either parent in violation of a court order;

(3)    Refusal to attend a court ordered parent education seminar may be considered by the court as a lack of good faith effort in these proceedings;

(4)    The disposition of each parent to provide the child with food, clothing, medical care, education and other necessary care;

(5)    The degree to which a parent has been the primary caregiver, defined as the parent who has taken the greater responsibility for performing parental responsibilities;

(6)    The love, affection, and emotional ties existing between each parent and the child;

(7)    The emotional needs and developmental level of the child;

(8)    The moral, physical, mental and emotional fitness of each parent as it relates to their ability to parent the child. . . .;

(9)    The child's interaction and interrelationships with siblings, other relatives and step-relatives, and mentors, as well as the child's involvement with the child's physical surroundings, school, or other significant activities;

(10)    The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment;

(11)    Evidence of physical or emotional abuse to the child, to the other parent or to any other person.  The court shall, where appropriate, refer any issues of abuse to juvenile court for further proceedings;

(12)    The character and behavior of any other person who resides in or frequents the home of a parent and such person's interactions with the child;

(13)    The reasonable preference of the child if twelve (12) years of age or older.  The court may hear the preference of a younger child upon request. The preference of older children should normally be given greater weight than those of younger children;

(14)    Each parent's employment schedule, and the court may make accommodations consistent with those schedules; and

(15)    Any other factors deemed relevant by the court.

(16)    Whether a parent has failed to pay court-ordered child support for a period of three (3) years or more.

Tenn. Code Ann. § 36-6-106(a).[4]

With the exception of Factor 3, which the court found did not favor either party, and Factors 14 and 16, which the court found inapplicable, the court held that the factors overwhelmingly favored Father.  We agree.  The record is replete with evidence establishing Mother's refusal to follow the residential schedule, Mother's contempt for Father that resulted in unnecessary and invasive medical exams for the Child, Mother's involvement of family members in her dispute with Father, and Mother's physical abuse of the Child that led to the initial transfer of custody.  Further, Mother failed to address the Child's developmental needs and lied to Father as to her efforts in addressing the same. We agree with the trial court that Father has shown himself to be far more responsible and responsive to the Child's needs.  With these considerations in mind, we affirm the trial

---

[4] Effective July 1, 2025, the General Assembly amended Tennessee Code Annotated § 36-6-106(a) by adding an additional factor.  *See* 2025 Tenn. Pub. Acts, Ch. 265 § 2 (S.B. 943).  The amended statute does not apply to this action, heard on September 13, 2024.

court's finding that modification of the primary residential parent was in the best interest of the Child. We likewise affirm the trial court's adjustment of the residential schedule and requirement of supervision until such time as Mother established that she would no longer physically harm the Child or cause further unnecessary medical examinations based upon an unfounded belief that Father was abusing the Child.

## V. CONCLUSION

The judgment of the trial court is affirmed. The case is remanded to the trial court for such further proceedings as may be necessary and consistent with this opinion. Costs of the appeal are taxed to the appellant, Ashlea G.

_____
JOHN W. McCLARTY, JUDGE