IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs February 4, 2026



IN RE ELLIE C.[1]

**Appeal from the Juvenile Court for Shelby County**
**No. EE1821          Tarik B. Sugarmon, Judge**

_____

**No. W2025-01072-COA-R3-JV**
_____

This appeal arises from the trial court's modification of a residential schedule in which the trial court awarded the parents equal co-parenting time. We now affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed; Case Remanded**

JOHN W. MCCLARTY, P.J., E.S., delivered the opinion of the court, in which JEFFREY USMAN, and CARMA DENNIS MCGEE, JJ., joined.

Erika B., Collierville, Tennessee, pro se appellant.

Rachel L. Lambert, Cordova, Tennessee, for the appellee, Jacob C.

**OPINION**

## I.      BACKGROUND

Ellie C. ("the Child") was born to Erika B. ("Mother") and Jacob C. ("Father") in March 2014. The record is unclear as to the dynamics of the relationship between the parties until March 11, 2022, when they entered into an agreed order, in which Mother was designated as the primary residential parent and Father was awarded 125 days of co-parenting time. While visiting Mother, the Child resided in a home with Mother, Jonas B. ("Stepfather"), two stepsisters, and a half-sister. While visiting Father, the Child resided in a home with Father, Jessica C. ("Stepmother"), and a stepsister.[2]

---

[1] This court has a policy of protecting the identity of children by initializing their last name in certain proceedings.

[2] Father and Stepmother married in January 2024.

In December 2023, Father filed a petition to modify the agreed order, alleging that a material change in circumstances had occurred that necessitated a change in the residential schedule. Father asserted that Mother was modifying his co-parenting time and advising the Child that time spent with Father was dependent upon her behavior. Father further alleged that Mother was no longer emotionally or financially stable and was abusing alcohol and prescription medication. Mother denied these allegations.

The action proceeded to a hearing before the magistrate judge on March 24, 2025. Mother appeared pro se but did not testify. Testimony was introduced to establish a physical altercation between Mother and Stepfather that required police involvement in December 2024. The Child, along with her stepsisters and half-sister, were present. Mother and Stepfather later reconciled.

Stepfather confirmed that he pushed Mother onto the bed, that she then pushed him into the wall, and that he responded by holding her down on the bed before ultimately releasing her. She left before the police arrived. He testified that he and Mother have probably argued two or three times in the last six years but that this was the first argument that involved physical force. He noted that the argument involved a discussion of their separation and his daughters' lack of support for their relationship.

Stepfather then testified concerning his own custody and co-parenting issues with his ex-wife that resulted in a court order requiring reunification therapy between himself and his daughters. He asserted that he has been unable to coordinate such therapy as a result of their mother's interference. Despite these issues with his side of the family, he believed he was able to maintain a good relationship with the Child. He explained,

> We live in a very good household. I wouldn't say we live in a very perfect household because nobody does, but when people come against us, it does just make it very difficult to have a good relationship with those people.

He acknowledged that he is required to submit to random drug screening. He admitted marijuana use, explaining that it was a legal amount purchased from a convenience store.

Peter H. testified concerning his tangential relationship with the parties. He stated that his current wife co-parents her two children with Stepfather. He claimed that the girls often appeared "visibly distraught" upon their return from visitation with Stepfather and Mother. He was also concerned about potential drug abuse in the home.

Stepmother testified concerning a loving relationship between the Child and Father. She stated that the Child had her own bedroom and bathroom while with them. The Child also enjoyed a loving relationship with her daughter when their visitation overlapped. Father confirmed Stepmother's testimony and claimed that he filed his petition due to Mother's refusal to co-parent and adhere to the agreed upon residential schedule. He

asserted that Mother also used his scheduled co-parenting time as a reward or consequence for the Child, e.g., she could earn extra time with Father for good behavior or lose time with Father for bad behavior. He claimed that Mother also put stipulations on his co-parenting time and often questioned his value as a father.

Following the hearing, the trial court found that a material change in circumstances had occurred that necessitated a change in the residential schedule. The court maintained Mother's designation as the primary residential parent but increased Father's co-parenting time to 182.5 days, representing an equal split of parenting time. The court further advised the parties to share decision-making authority and to come to an agreement regarding the Child's schooling following the end of the current school term.

Mother filed a written request for a review of the record by the juvenile court judge with exceptions to the magistrate's findings, specifically the testimony presented by Peter H. and text messages and other documents entered into evidence. Noting that the record did not evidence any attempt by Mother to object to the admissibility of evidence, the court found that the magistrate did not abuse its discretion and that the factual findings were supported by the evidence presented. This appeal followed.

## II.     ISSUES

We consolidate and restate the issues raised on appeal as follows:

A.      Whether the trial court erred in its admission of evidence.

B.      Whether the trial court erred in modifying the residential schedule based upon a finding of a material change in circumstances.

C.      Whether Father is entitled to attorney fees on appeal.

## III.    STANDARD OF REVIEW

"A trial court's determinations of whether a material change in circumstances has occurred and whether modification of a parenting plan serves a child's best interests are factual questions." *Armbrister v. Armbrister*, 414 S.W.3d 685, 692 (Tenn. 2013) (citing *In re T.C.D.*, 261 S.W.3d 734, 742 (Tenn. Ct. App. 2007)). Therefore, "appellate courts must presume that a trial court's factual findings on these matters are correct and not overturn them, unless the evidence preponderates against the trial court's findings." *Id.*; *see also* Tenn. R. App. P. 13(d). Likewise, trial courts have "broad discretion in formulating parenting plans" because they "are in a better position to observe the witnesses and assess their credibility." *C.W.H. v. L.A.S.*, 538 S.W.3d 488, 495 (Tenn. 2017) (citing *Armbrister*,

414 S.W.3d at 693). On appeal, we review a trial court's decision regarding parenting schedules for an abuse of discretion. *Armbrister*, 414 S.W.3d at 693 (citing *Eldridge v. Eldridge*, 42 S.W.3d 82, 88 (Tenn. 2001)). "An abuse of discretion occurs when the trial court . . . appl[ies] an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice." *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105 (Tenn. 2011). A trial court abuses its discretion in establishing a residential parenting schedule "only when the trial court's ruling falls outside the spectrum of rulings that might reasonably result from an application of the correct legal standard to the evidence found in the record." *Eldridge*, 42 S.W.3d at 88. We review questions of law de novo, affording the trial court's decision no presumption of correctness. *Armbrister*, 414 S.W.3d at 692 (citing *Mills v. Fulmarque*, 360 S.W.3d 362, 366 (Tenn. 2012)).

## IV. DISCUSSION

### A.

As a threshold issue, Mother, appearing pro se, takes issue with the trial court's admission of evidence. Regarding pro se litigants, this court has explained:

> Parties who decide to represent themselves are entitled to fair and equal treatment by the courts. The courts should take into account that many pro se litigants have no legal training and little familiarity with the judicial system. However, the courts must also be mindful of the boundary between fairness to a pro se litigant and unfairness to the pro se litigant's adversary. Thus, the courts must not excuse pro se litigants from complying with the same substantive and procedural rules that represented parties are expected to observe.

*Young v. Barrow*, 130 S.W.3d 59, 62–63 (Tenn. Ct. App. 2003) (internal citations omitted).

First, Mother asserts that the court erred in the admission of Peter H.'s testimony, who she claims was a biased witness not revealed to her through discovery prior to the hearing. The record reflects that Mother did not object to the admissibility of this testimony at the hearing and that she cross-examined him thoroughly on his bias. Similarly, Mother claims that the court erred in not admitting bodycam footage from the extended police investigation of the domestic disturbance; however, the record confirms that Mother never formally presented this evidence for the court's review. These issues are waived.

Mother next takes issue with a number of individual exhibits that were admitted for the court's review. "Generally, the admissibility of evidence is within the sound discretion of the trial court." *Mercer v. Vanderbilt Univ., Inc.*, 134 S.W.3d 121, 131 (Tenn. 2004).

"The trial court's decision to admit or exclude evidence will be overturned on appeal only where there is an abuse of discretion." *Id.* The record reflects that Mother objected to some of these exhibits and that the court considered her argument before ultimately overruling her objections and, in some instances, advising Mother that her objections did not relate to the admissibility of the evidence. Following our review, we hold that the court did not abuse its discretion in the admission of these items.

B.

Mother asserts that the court's finding of a material change in circumstances was based on a manufactured series of events orchestrated by Father and that the resulting change in the residential schedule was not in the best interest of the Child, who requires stability and continuity in caregivers. To modify an existing parenting plan, the trial court must first determine whether a material change in circumstances affecting the child's best interest has occurred. *Armbrister*, 414 S.W.3d at 697–98 (citing Tenn. Code Ann. § 36-6-101(a)(2)(C)). "[T]he change must have occurred after entry of the order sought to be modified." *Gentile v. Gentile*, No. M2014-01356-COA-R3-CV, 2015 WL 8482047, at *5 (Tenn. Ct. App. Dec. 9, 2015) (citing *Caldwell v. Hill*, 250 S.W.3d 865, 870 (Tenn. Ct. App. 2007)). "[A] material change of circumstance for purposes of modification of a residential parenting schedule may include, but is not limited to, significant changes in the needs of the child over time, which may include changes relating to age; significant changes in the parent's living or working condition that significantly affect parenting; failure to adhere to the parenting plan; or other circumstances making a change in the residential parenting time in the best interest of the child." Tenn. Code Ann. § 36-6-101(a)(2)(C). "Facts or changed conditions which reasonably could have been anticipated when the initial residential parenting schedule was adopted may support a finding of a material change in circumstances, so long as the party seeking modification has proven by a preponderance of the evidence 'a material change of circumstance affecting the child's best interest.'" *Id.* at 704 (quoting Tenn. Code Ann. § 36-6-101(a)(2)(C)).

Here, the record confirms that Mother failed to adhere to the residential schedule; unilaterally modified Father's co-parenting time; and used Father's co-parenting time as a tool in maintaining the Child's behavior. Based on the foregoing, as well as our review of the entire record, we conclude that the evidence does not preponderate against the finding of a material change in circumstance sufficient to modify the residential schedule.

Once the trial court determines that there has been a material change in circumstance sufficient to modify the residential schedule, the second step in the modification analysis requires the court to determine whether any such modifications are in the child's best interest under the factors in Tennessee Code Annotated section 36-6-106(a). *Boyer v. Heimermann*, 238 S.W.3d 249, 259–60 (Tenn. Ct. App. 2007). The best interest determination "is a fact-sensitive inquiry." *Steakin v. Steakin*, No. M2017-00115-COA-R3-CV, 2018 WL 334445 at *5 (Tenn. Ct. App. Jan. 9, 2018). The determination "'does

not call for a rote examination of each of [the relevant] factors and then a determination of whether the sum of the factors tips in favor of or against the parent.'" *Id.* (quoting *In re Marr*, 194 S.W.3d 490, 499 (Tenn. Ct. App. 2005)). Rather, "'[t]he relevancy and weight to be given each factor depends on the unique facts of each case.'" *Id.* The trial court is directed to consider the following factors when conducting the best interest analysis:

(1)    The strength, nature, and stability of the child's relationship with each parent, including whether one (1) parent has performed the majority of parenting responsibilities relating to the daily needs of the child;

(2)    Each parent's [] past and potential for future performance of parenting responsibilities, including the willingness and ability of each of the parents [] to facilitate and encourage a close and continuing parent-child relationship between the child and both of the child's parents, consistent with the best interest of the child. In determining the willingness of each of the parents [] to facilitate and encourage a close and continuing parent-child relationship between the child and both of the child's parents, the court shall consider the likelihood of each parent [] to honor and facilitate court ordered parenting arrangements and rights, and the court shall further consider any history of either parent [] denying parenting time to either parent in violation of a court order;

(3)    Refusal to attend a court ordered parent education seminar may be considered by the court as a lack of good faith effort in these proceedings;

(4)    The disposition of each parent to provide the child with food, clothing, medical care, education and other necessary care;

(5)    The degree to which a parent has been the primary caregiver, defined as the parent who has taken the greater responsibility for performing parental responsibilities;

(6)    The love, affection, and emotional ties existing between each parent and the child;

(7)    The emotional needs and developmental level of the child;

(8)    The moral, physical, mental and emotional fitness of each parent as it relates to their ability to parent the child. . . .;

(9)    The child's interaction and interrelationships with siblings, other relatives and step-relatives, and mentors, as well as the child's involvement with the child's physical surroundings, school, or other significant activities;

(10)    The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment;

(11)    Evidence of physical or emotional abuse to the child, to the other parent or to any other person.  The court shall, where appropriate, refer any issues of abuse to juvenile court for further proceedings;

(12)    The character and behavior of any other person who resides in or frequents the home of a parent and such person's interactions with the child;

(13)     The reasonable preference of the child if twelve (12) years of age or older.  The court may hear the preference of a younger child upon request. The preference of older children should normally be given greater weight than those of younger children;

(14)    Each parent's employment schedule, and the court may make accommodations consistent with those schedules; and

(15)    Any other factors deemed relevant by the court.

(16)    Whether a parent has failed to pay court-ordered child support for a period of three (3) years or more.

Tenn. Code Ann. § 36-6-106(a).[3]

The court found that many of the factors were either inapplicable or favored neither party.  While recognizing Mother's long-term role as the Child's primary caregiver (Factors 1 and 5), the court focused its discussion on Mother's refusal to co-parent in a healthy manner and her unilateral control over the residential schedule to the Child's detriment, finding that Factors 2, 7, 10, 11, and 15 weighed in favor of Father.  We agree. The record is replete with evidence establishing Mother's inability to facilitate and encourage a healthy parent-child relationship between the Child and Father, who established his ability to provide a stable, satisfactory environment free from domestic violence.  With these considerations in mind, we affirm the trial court's adjustment of the residential schedule as in the best interest of the Child.

---

[3] Effective July 1, 2025, the General Assembly amended Tennessee Code Annotated § 36-6-106(a) by adding an additional factor.  *See* 2025 Tenn. Pub. Acts, Ch. 265 § 2 (S.B. 943).  The amended statute does not apply to this action, heard on March 24, 2025.

C.

Father has moved for attorney fees on the grounds that the appeal is frivolous. Tennessee Code Annotated section 27-1-122 provides for the award of attorney fees when a party is required to respond to a frivolous appeal:

> When it appears to any reviewing court that the appeal from any court of record was frivolous or taken solely for delay, the court may, either upon motion of a party or of its own motion, award just damages against the appellant, which may include, but need not be limited to, costs, interest on the judgment, and expenses incurred by the appellee as a result of the appeal.

Tenn. Code Ann. § 27-1-122; *First Cmty. Mortg. v. Appraisal Servs. Grp.*, 644 S.W.3d 354, 367-368 (Tenn. Ct. App. 2021). "Determining whether to award [section 27-1-122] damages is a discretionary decision." *Id.* at 368; *Young*, 130 S.W.3d at 59. We respectfully decline the request for attorney fees on appeal.

## V.    CONCLUSION

For the reasons stated above, we affirm the judgment of the trial court and remand for such further proceedings as may be necessary and consistent with this opinion. Costs of the appeal are taxed to the appellant, Erika B.

s/John W. McClarty

JOHN W. McCLARTY, JUDGE